**Helen MASCUILLI, Administratrix of the Estate of Albert Mascuilli, Deceased, Appellant,**

**v.**

**UNITED STATES of America.**

**No. 17428.**

United States Court of Appeals Third Circuit.

Argued March 6, 1969.

Decided June 6, 1969.

---

Martin J. Vigderman, Freedman, Borowsky & Lorry, Philadelphia, Pa. (Abraham E. Freedman, Philadelphia, Pa., on the brief), for appellant.

Harvey M. Katz, Atty., Dept. of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., Drew J. T. O'Keefe, U. S. Atty., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before KALODNER, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This unfortunately protracted lawsuit comes to this court for the third time. Appellant, as administratrix for a deceased longshoreman, filed a libel in admiralty in 1959 seeking damages from appellee, United States (Government), under both the Pennsylvania Death and Survival Acts.[1] The longshoreman was

---

1. Pennsylvania Wrongful Death Act, 12 P.S. § 1601, et seq.; Pennsylvania Survival Act, 20 P.S. § 320.601 et seq.

Though the Death Act was not specifically mentioned in the libel, the parties have proceeded throughout on the assump-

killed while employed aboard the USNS Marine Fiddler in the Port of Philadelphia on May 1, 1959.

Shortly after the libel was filed, a district court judge entered a pre-trial order determining that under the admitted facts the Government was liable to appellant and reserving the damage issue for trial. The court did not state whether the basis for its decision was negligence or unseaworthiness on the part of the Government, or both. The damage issue was tried extensively before a second district judge without a jury. Counsel for both parties explicitly agreed that they would present oral argument at the conclusion of the testimony and that the court would fix the amount of damages without filing any findings of fact or conclusions of law. The judge fixed damages at $124,000, and a judgment in that amount was entered.

The Government appealed on several grounds, but this court's opinion shows that the decision was reversed solely on the ground that since there were material facts in dispute the district court committed error in entering the pre-trial order of liability against the Government. Mascuilli v. United States, 313 F.2d 764 (3rd Cir. 1963). On remand to the district court a third judge conducted a final hearing on the liability issue. At that hearing appellant's counsel contended that if liability was found the court was bound by the prior damage determination. The court disagreed and ruled that it would try both the liability and damages issues.

The district court thereafter determined that the Government was not liable because the ship was not unseaworthy and the Government was not negligent. It found that the negligence of other longshoremen caused the fatal accident and did not charge the Govern-

ment with their negligence. Judgment was accordingly entered for the Government. However, in its findings of fact the court recited that "in the event that this court would have found for the libellant, it would have assessed damages in libellant's favor" in the amount of $60,438.30. Mascuilli v. United States, 241 F.Supp. 354 (E.D.Pa.1965).

Appellant appealed from the judgment in favor of the Government, contending that liability existed. She argued that liability was the only issue on appeal and that the district court's reassessment of damages was a nullity because the district court was bound by the original determination as to damages ($124,000). This court affirmed the district court's determination that there was no liability and stated that there was no need to pass upon the appellant's contention with respect to damages. 358 F.2d 133 (3rd Cir. 1966). The United States Supreme Court reversed this decision in a per curiam opinion and remanded the action to the district court for further proceedings in conformity with its opinion. Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967). It is clear from a reading of the cases cited in the Supreme Court opinion that it found liability on the basis of unseaworthiness even though the unseaworthiness did not flow from any negligence of the Government. Its decision, in our view, did not affect the validity of the district court's determination that the Government was not chargeable with negligence.[2]

After the Supreme Court remand, the appellant filed a motion in the district court requesting the entry of judgment in the amount of $124,000, as found in the first damage trial. The Government filed a motion for entry of judgment in the amount of $60,438.30, the amount the district judge previously found he would

tion that a claim under that Act has been asserted, and it is clear from the libel that such a claim was intended to be asserted.

**2.** Appellant still contends that the Government was guilty itself of negligence. As-

suming the doubtful proposition that the question of negligence is still open, we think the district court's finding to the contrary has the requisite record support.

have assessed had he found liability. Each side filed an answer resisting the other's motion. Thereafter the motions came before the judge who had presided at the second damage trial. He denied appellant's motion, granted the Government's motion and entered judgment for appellant in the sum of $60,438.30. It is this order which is now appealed.

■ Appellant contends initially that the first damage award of $124,000 was never impugned by the subsequent appeal proceedings and thus the district court committed error in not incorporating that amount in the order presently on appeal. However, the language of our opinion and judgment entered thereon specifically vacating the $124,000 judgment makes it abundantly clear that the original monetary judgment was not to be binding on remand. Thus, the district court did not commit error in denying appellant's motion on the ground advanced by her.

■ We next consider the appellant's contention that the district court erroneously granted the Government's motion.

In its opinion granting the motion the district court justified the readoption of its prior assessment of damages in the following language:

> "In conclusion we have my Brother, The Honorable John W. Lord, Jr.'s judgment of $124,000.00 which was reversed and vacated. In no opinion or order was this award reinstated or affirmed; so it is therefore null and void. All that remains is my Finding of Fact No. 36, supra [calculation of damages of second trial], that was not disturbed, changed, altered or vacated by either the Circuit Court of Appeals or the Supreme Court, for only the question of liability was reversed by the Supreme Court."

We think the district court erred when it assumed that its prior finding on damages was conclusive. The fact is that this court specifically noted on the second appeal that it was not ruling on the damage issue because of its affirmance of the no-liability determination. It is equally clear that the Supreme Court reversed solely on the liability issue, as the cases cited in its per curiam opinion indicate. Thus, the $60,438.30 damage finding, which the district court reaffirmed, was not free from scrutiny, and should have been reviewed on the merits. Compare Communist Party v. Subversive Activities, 102 U.S.App.D.C. 395, 254 F.2d 314 (1958).

However, recognizing that it would be highly desirable to bring this drawn out matter to an end, we will next consider whether the district court's decision to adopt its prior findings as to damages, though based on the erroneous assumption that its prior ruling was conclusive, can be justified on the record as an exercise of sound discretion. We therefore turn to the merits of the $60,438.30 damage findings and the applicable law.

The district court stated that the "Pennsylvania Wrongful Death Act is controlling as to the calculation of damages." Appellant claims that both the Wrongful Death Act and the Survival Act are applicable, while the Government argues that the Survival Act is the only basis for recovery.[3] Since the measure of damages is different under each statute, we are confronted at the outset of our discussion of the merits of the damage claim with the question of whether the district court was correct in purporting to apply the Wrongful Death Act. We note, parenthetically, that this question, though previously raised, has not been decided at any prior stage of the proceedings.

3. There is no dispute on this appeal as to the applicability of the Survival Act, since it merely vests in the deceased's personal representative the right to bring an action which the decedent could have brought had he lived. Since decedent had a right to bring an action against the Government based on unseaworthiness, his administratrix now has that right. For a full discussion of the scope and applicability of the Pennsylvania Survival and Wrongful Death Acts, see Ferne v. Chadderton, 363 Pa. 191, 69 A.2d 104 (1949) and Curtis v. A. Garcia y Cia, Ltda., 241 F.2d 30, 85 A.L.R.2d 1186 (3 Cir. 1957).

The Death Act provides: "Whenever death shall be occasioned by unlawful violence or negligence, [designated persons] may maintain an action for and recover damages for the death thus occasioned." 12 P.S. § 1601. In the course of the prior court proceedings, it was established that an action based on negligence did not lie, since the Government was found not to be negligent and the negligence of the longshoremen which caused the death was not chargeable to the shipowner. The sole basis for the action was breach of the warranty of seaworthiness, a determination of which does not depend in any way on findings of negligence and causation. The issue then is whether a claim for breach of the warranty of seaworthiness resulting from negligence not chargeable to the shipowner is cognizable under the Pennsylvania Death Act.[4] We are directed to look to state law for the answer by the Supreme Court's affirmance of our decision in Tungus v. Skovgoord, 252 F.2d 14 (3 Cir., 1957), aff'd., 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1957), which held that admiralty will enforce a Death Act claim with whatever conditions the state has attached thereto.[5]

Appellant argues that, although the decedent was killed as a result of the negligence of the longshoremen and not that of the Government, the death was "occasioned" by negligence within the meaning of the Death Act, and that is enough to hold the shipowner liable thereunder.

We think the Pennsylvania statute must be read to apply only to the situation where the person sought to be held liable is either himself negligent or where he can be charged in law with the negligence of others. Since the negligence of the longshormen cannot be charged to the Government, appellant has failed to prove a claim under the Death Act. Certainly, if this were a non-maritime claim, a defendant could not be held liable under the Death Act for negligence not chargeable to it. And we do not think this result is altered by the fact that the death claim arises out of a maritime accident where the Death Act with all its state imposed conditions must be honored.

Appellant argues that although there is no Pennsylvania case precisely on point, the recent trend in Pennsylvania case law is toward a more "liberal" interpretation of the Act than the one we have given, citing in particular Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796 (1964).

We find no such "liberalization" on the part of the Pennsylvania Supreme Court in regard to the construction of the statute. In the first place, the court in Griffith was dealing with a claim under the Survival Act, not the Wrongful Death Act. Secondly, underlying the alleged breach of warranty of safe carriage in Griffith was the claim of negligence on the part of employees of the carrier. Finally, the Pennsylvania Supreme Court subsequently ruled in DiBelardino v. Lemmon Pharmacal Co., 416 Pa. 580, 208 A.2d 283 (1965), and reaffirmed in Miller v. Preitz, 422 Pa. 383, 221 A.2d 320 (1966), that breach of warranty, giving rise to a suit in assumpsit, is not sufficient to support a Wrongful Death Act claim. While it may be argued that all the court intended was to compel the bringing of such suits in trespass, we find that the stronger implication of the cases is that allegations of breach of warranty alone are not sufficient to support a claim for recovery under the Death Act. In any event, the cases certainly cannot be read as implying a liberalization of the court's view of the Death Act

---

4. We are not confronted with any contention by appellant that a claim based on unseaworthiness unaccompanied by negligence of any sort can support a Wrongful Death action.

5. Appellant urges us to adopt the approach of the dissent in Tungus that the Death Act provides a remedy to which the court will then apply the full sweep of maritime law in determining the right to recover. We do not conceive it to be our function, at least in the present context, to assume that Tungus no longer represents controlling precedent.

requirement of "unlawful violence or negligence." [6]

We therefore conclude that appellant did not state a claim cognizable under the Wrongful Death Act and that the district court was in error in finding the Act applicable.

■ Recovery, however, is permissible under the Survival Act. While the district court improperly held the Wrongful Death Act to be applicable, a review of its findings on damages suggests that the district court did not in fact apply the Death Act, but granted recovery on items cognizable only under the Survival Act. We will therefore examine the individual damage items to determine whether they were properly calculated. Before doing so, we must first consider whether federal or state law controls the damage determination. The question of the proper measure of damages is inseparably connected with the right of action. Chesapeake & Ohio Ry. v. Kelly, 241 U.S. 485, 491, 36 S.St. 630, 60 L.Ed. 1117 (1916). The claim before us arises from a breach of the warranty of seaworthiness and as such is of exclusive maritime origin and governed by federal maritime principles. This conclusion is not altered by the fact that the right of action was "saved" by the Pennsylvania Survival statute. See Curtis v. Garcia, supra.

■ Turning to the individual items of damage, our determination that maritime law is controlling leads us to conclude that the district court did not abuse its discretion in using the rate of 6% compounded to reduce the decedent's estimated average future income for his estimated working life to present worth. It is true, as appellant suggests, that Pennsylvania case law directs that 6% simple interest be used for the reduction to present worth (discounting), Brodie v. Philadelphia Transportation Co., 415 Pa. 296, 203 A.2d 657 (1964). However, Pennsylvania law is not controlling here, and the federal standard permits the district court to apply more flexible rules in determining the discount factor. See Chesapeake & Ohio Ry. v. Kelly, supra.

■ We do find that the district court committed error when it failed to treat the loss of earnings up to the time of trial as past losses, not subject to discounting. The theory behind discounting is that "a given sum of money on hand is worth more than the like sum of money payable in the future." Chesapeake & Ohio Ry. v. Kelly, supra, 241 U.S. at 489, 36 S.Ct. at 632 (1916). However, where as here appellant has not had the money in hand and therefore could not have accumulated any interest on it, there is no occasion to reduce the prehearing portion of net earnings to present worth. The district court should therefore not have discounted for the entire period of decedent's estimated working life. Accord First Nat. Bank in Greensburg v. M. & G. Convoy, 102 F.Supp. 494, 496 (W.D.Pa.1952) and Kowtco v. Delaware & Hudson Railroad Corp., 131 F.Supp. 95, 107 (M.D.Pa. 1955).

■ A third alleged error is that the district court apparently deducted from future earnings the projected living expenses only for the decedent and not for the entire family.[7] Under Pennsylvania law, in case of death, the family expenses (i. e., earnings which would have gone to the support of decedent's widow and children) are properly recoverable in a

---

6. Appellant also seeks support from Judge Staley's opinion in Scott v. Eastern Air Lines, 399 F.2d 14 (3 Cir., 1968), where he concluded that Pennsylvania law would recognize a claim under the Wrongful Death Act for breach of the contract of non-negligent carriage. In Scott, however, there was a finding of negligence chargeable to the defendant resulting in the breach. Moreover, that expression of view by Judge Staley was the decisional basis of less than a majority of the court.

7. We say apparently because there is no indication in the district court computations as to whether the expenses deducted were only those of the decedent or included the entire family's. However, both parties treat the figure arrived at as if it represented only the decedent's expenses, and the figure is so low ($1,250 average expenses per year) that it could not reasonably represent expenses required for a family of six.

Wrongful Death action and therefore excluded from the Survival Act recovery, avoiding duplication of recovery from the tortfeasor. Pezzulli v. D'Ambrosia, 344 Pa. 643, 26 A.2d 659, 661 (1942) and Ferne v. Chadderton, supra, 69 A.2d at 108. Since we have determined that maritime law controls, the difficult question arises whether under such law the family expenses are still to be deducted from the Survival Act recovery to the extent of loss of future earnings where there can be no Wrongful Death Act claim.

We note initially that had the deceased lived and brought the action there would be no doubt of his right to recover provable loss of future earnings without any deduction for the amounts he would thereafter have used for family living expenses. In such a case the family would presumably have the benefit of such money.

Should the result be different because deceased died before the action was instituted on behalf of his estate? We think not under the circumstances of this case. While it is true that the beneficiaries of an estate might not be the same individuals who could recover under the Death Act, it is quite usual to find that the two substantially coincide. Indeed, such is the case here where the widow and her children will be the beneficiaries of any sums given to her deceased husband's estate. We recognize that we are dealing in practicalities rather than absolute logic, but we are satisfied that the equitable origins of maritime law permit such an approach.

We take note that Pennsylvania law permits the family expense recovery ordinarily to be made only under the Death Act. But as their courts have indicated it is done primarily to avoid duplication of recovery. See Pezzulli v. D'Ambrosia, supra, and Ferne v. Chadderton, supra. We have no such concern here because there was no right of action under the Death Act as there would have been were the Government's negligence the basis of liability. Thus, controlling maritime law apart, we are not evading the Death Act. Cf. Burns v. Goldberg, 210 F.2d 646 (3rd Cir., 1954). Moreover, the defendant is not paying more damages than were occasioned by the accident on its unseaworthy vessel. We think that it was proper for the district court to deduct only the estimated expenses for the deceased and not for the entire family.

■■■ We therefore conclude that the district court erroneously granted the Government's motion for a judgment of $60,438.30 and that the computations supporting the judgment cannot be justified. The only other alternative to a remand at this point is to sustain the original judgment of $124,000 on the theory that the district court could have done so in the exercise of its sound discretion.[8] The original judgment, however, was rendered without the judge knowing the legal basis of liability—negligence, unseaworthiness, or both. An examination of the testimony taken on the damage issue clearly indicates that some of the evidence given was relevant only to a recovery for claims under the Wrongful Death Act. We think it not unreasonable to infer from this that the $124,000 award included sums for such claims.[9] Therefore, we think it would be an abuse of discretion to re-instate the original judgment.

We accordingly remand the case to the district court for a new hearing on and determination of the issue of damages. In recalculating the damages, the district court is directed to hear testimony and make its findings solely under the Survival Act but apply federal maritime principles. In computing past earnings, which we have found not to be subject to discount, we think it proper that the district court make such computation up to the date of the hearing on this remand

8. We have already concluded only that the district court was not *bound* to re-instate the original $124,000 judgment.

9. We can only make an inference because we are without the benefit of findings of fact and conclusions of law, the parties having agreed to waive their right to have the district court make them.

874

and employ when applicable and relevant the actual figures rather than estimates.

We regret having to remand the case, but we think that the ends of justice require it. We have decided as many issues as possible to assist the district court in making a final resolution of the case. Both parties made certain contentions as to the impropriety of the district court's finding on damages which we did not pass on. At the hearing on damages, the parties may renew them without prejudice.

The judgment of the district court will be reversed and the action remanded for proceedings consistent with this opinion.