**Helen MASCUILLI, Administratrix of the Estate of Albert Mascuilli, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 203 of 1959.**

United States District Court, E. D. Pennsylvania.

March 31, 1972.

Milton M. Borowsky, Philadelphia, Pa., for plaintiff.

Warren D. Mulloy, U. S. Atty., Philadelphia, Pa., Anthony W. Gross, U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER ASSESSING DAMAGES

DITTER, District Judge.

Albert Mascuilli, a longshoreman, was killed while working aboard the USNS Marine Fiddler in the port of Philadelphia on May 1, 1959. Shortly thereafter, Helen Mascuilli, his wife and administratrix, brought the present action to recover damages that resulted from his death. After three adjudications by this court, three by the Court of Appeals, and one by the Supreme Court,[1] the matter is now before this court to have those damages assessed.

When a husband and father is killed by a negligent act, two separate rights of recovery are created. In a survival action, the decedent's estate seeks reimbursement for the damages he suffered by reason of injury and death, and in a wrongful death action, his dependents sue for the losses they sustained by the termination of decedent's life. In the instant case, however, death did not result from negligence for which the defendant was responsible, but from unseaworthiness, and the question is whether damages are therefore to be computed on some different basis or by the same scales.

1. Mascuilli v. United States, 188 F.Supp. 754 (E.D.Pa.1960), reversed, 313 F.2d 764 (3rd Cir. 1963); on remand, 241 F.Supp. 354 (E.D.Pa.1965), aff'd, 358 F. 2d 133 (3rd Cir. 1966), reversed, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967).

Having made an assessment of damages in 241 F.Supp. 354, this court then entered an award in the amount there computed. This order was reversed, 411 F.2d 867 (3rd Cir. 1969), and the case remanded to have damages reconsidered.

■ Historically, dependents who claimed the wrongful death benefits for a longshoreman killed in territorial waters were limited by conditions imposed by the law of the state where the death occurred: The M/V Tungus v. Skovgaard, 252 F.2d 14 (3rd Cir. 1957), aff'd 358 U.S. 588, 79 S.Ct. 503, 523, 3 L.Ed. 2d 524 (1959). In the instant case, this would mean that Mascuilli's family could recover nothing for his wrongful death because the Pennsylvania Wrongful Death Act, the Act of April 15, 1851, P. L. 669, 12 P.S. § 1601 et seq., was held to apply only to deaths resulting from defendant's negligence. This was the precise holding of the most recent Court of Appeals decision in this case.[2] However, all prior rulings in this matter, and all those similar to it, must be reconsidered in the light of Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), which held that a right of action for wrongful death exists under the principles of maritime law. Specifically, *Moragne* permitted dependents of a longshoreman killed in Florida waters to recover their losses stemming from his death as a matter of maritime law despite a state law that would have denied relief.

Although *Moragne* held that damages should be allowed under the principles of maritime law, it did not determine precisely how the remedy was to be fashioned and used. For example, the Court did not decide which statute of limitations was applicable, if any, or what elements of loss might be recovered by the decedent's dependents. *Moragne* pointed out that a considerable body of law exists under various state wrongful death statutes, as well as federal decisions under the Death on the High Seas Act, 46 U.S.C. § 761 et seq.[3] and left to further lower court decisions the job of forming the extent and limitations of the remedy.

■■ With this background in mind, I turn to the various elements which must be considered in making an award for wrongful death in this case. I believe that both the Pennsylvania Wrongful Death Act and the Death on the High Seas Act must be considered. Both allow recovery for "pecuniary loss" sustained by the decedent's family as a result of his death.[4] I conclude pecuniary loss encompasses the following:

(1) Loss of financial support the decedent would have contributed to family members: Skoda v. West Penn Power Company, 411 Pa. 323, 334, 191 A.2d 822 (1963); National Airlines, Inc. v. Stiles, 268 F.2d 400 (5th Cir. 1959).

(2) Loss of services to the widow: Gaydos v. Domabyl, 301 Pa. 523, 530, 152 A. 549 (1930); Michigan Central Railroad Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913).

---

2. 411 F.2d 867 (3rd Cir. 1969).

3. Also mentioned as possible sources for molding the wrongful death remedy were federal decisions under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., and the Jones Act, 46 U.S.C. § 688 et seq. It was pointed out that the former was basically a workmen's compensation act having principles of recovery which are "wholly foreign to those of general maritime law," while the latter deals with a standard of negligence "unlike any imposed by general maritime law." *Moragne*, 398 U.S. 407, 90 S.Ct. 1791, 26 L. Ed.2d 339. None of these federal statutes applied directly because in *Moragne*, as here, the decedent was killed in territorial waters. Had he only been injured or had the accident taken place on the high seas, one of the statutes would have dictated the appropriate remedy.

4. Ferne v. Chadderton, 363 Pa. 191, 197, 69 A.2d 104 (1949), holds that "pecuniary loss" may be recovered under the Pennsylvania Wrongful Death Act. This interpretation has been followed by the Court of Appeals: Eichmann v. Dennis, 347 F.2d 978 (3rd Cir. 1965). The term, "pecuniary loss," is used in section 2 of the Death on the High Seas Act, 46 U.S.C. § 762.

(3) Funeral expenses: Act of May 13, 1927, P.L. 992, 12 P.S. § 1604; Kotal v. Goldberg, 375 Pa. 397, 100 A.2d 630 (1953).[5]

(4) Nurture and guidance to children: Spangler v. Helm's New York-Pittsburgh Motor Express, 396 Pa. 482, 485, 153 A.2d 490 (1959); Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583, 588 (2d Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L. Ed.2d 526 and 370 U.S. 937, 82 S.Ct. 1577, 8 L.Ed.2d 806 (1962).

*Loss of Financial Support*

Decedent's family is entitled to the present worth of the financial support he would have provided during his expected life. Based upon his income in the years prior to his death, I computed decedent's average income as follows:

| | |
|---|---|
| 1956 Tax Return | $ 6,217.00 |
| 1957 Tax Return | 6,227.15 |
| 1958 Tax Return | 5,035.05 |
| 1959—Projected (Based on earnings of $2,405.95 until time of death) | 7,217.85 |
| Total, 1956–59 | $24,697.05 |
| Average, 1956–59 | 6,174.26 |
| 10% allowance for future increases | 617.44 |
| Average income after 1959 | $ 6,791.70 |

The following calculations were made to establish the loss decedent's family suffered in the way of financial contributions:

| | |
|---|---|
| Earnings, 5/1/59 to 3/31/72: $87,730. Allocated for family's support, 75% | $65,800. |
| Future earnings, 4/1/72 to retirement at 7/31/79, $49,810. Allocated for family's support, 50%, $24,905. reduced to present worth at six per cent compound interest | 19,860. |
| Future loss of contributions from retirement income, which reduced to present worth is $7,000. Allocated for wife's support, 50% | 3,500. |
| Total allowed for loss of support payable to family | $89,160. |

*Loss of Services to Maintain Home*

Pecuniary loss is broad enough to include the value of services which would, in the ordinary course of events, have been rendered by a deceased husband for his wife and family in and around the home. It is usually proven by showing the rendition of past services and assistance which occurred with such frequency that their continuance could reasonably be anticipated.

Here the evidence of such services was slight. Mrs. Mascuilli testified [6] that her husband had taken care of a house the family used in the summer time. In addition, he did the painting, finished a recreation room and washroom, and took care of the lawn and garden of their home. Despite the limited evidence in this regard, I am assigning a value of approximately $10. a week or $500. a year to decedent's services of this type.

| | |
|---|---|
| Past services, 5/1/59 to 3/31/72 | $6460. |
| Future, 7 years and 4 months, $3,670., reduced to present worth, at 6% compound interest | 2925. |
| Total | $9385 |

*Funeral Expenses*

Funeral costs of $2,961.05 were claimed. Under the Pennsylvania Wrongful Death Act, "reasonable funeral expenses of the deceased" may be awarded. Subjectively, I consider this bill to be excessive in light of Mr. Mascuilli's income and estate. Nevertheless, there is no evidence upon which I can base any reduction in the charges except in one minor particular. The total includes a double tombstone. Only one-half of that amount should be included in this bill. I therefore make an award of $2,875. for funeral expenses.

*Nurture and Guidance to Children*

A child whose father has been killed is entitled to compensation for the loss of care, training, advice, guidance, and education insofar as these matters result might well be reached today. See Dennis v. Central Gulf Steamship Corporation, 323 F.Supp. 943, 949 (E.D.La. 1971).

5. In a 1932 opinion, *The Culberson*, 61 F.2d 194, the Court of Appeals for the Third Circuit held that under the Death on the High Seas Act, funeral costs would be considered an estate expense and thus could not be recovered in a wrongful death action. In view of *Moragne* and the majority view of the states, a contrary

6. Hearing of November 21, 1969, pp. 20 and 29.

are susceptible to money valuation: Thomas v. Conemaugh Black Lick Railroad, 133 F.Supp. 533 (W.D.Pa.1955), aff'd 234 F.2d 429 (3rd Cir. 1956). The fact that there is no mathematical formula to convert these benefits into a precise number of dollars does not mean that no award should be allowed: Spangler v. Helm's New York-Pittsburgh Motor Express, supra.

■ There was evidence that decedent was devoted to his four children, who were 12, 13, 14, and 16 at the time of his death. He helped them with their school work, took them to church, and participated in sports and games with them. He assisted the children with music lessons and even took lessons himself. He hoped to send them to college. However, the decedent had two jobs. He not only was a longshoreman, but worked as a bartender on Friday, Saturday, and Monday nights. There are only a certain number of hours in the day and by the very nature of things, the time that decedent could be with his children was limited. Bearing in mind the age of the children, decedent's availability and the nature of the relationship which was described, I conclude a fair amount for loss of nurture would be $400. per year for each child during minority. I therefore make an award of $11,300. for this purpose.

### Summary of Wrongful Death Damages

To recapitulate, I conclude that damages for wrongful death should be awarded as follows:

| Loss of earnings: | | |
|---|---|---|
| Past | $65,800. | |
| Future | 23,360. | $89,160. |
| Services to widow in home | | |
| Past | $ 6,460. | |
| Future | 2,925. | $ 9,385. |
| Funeral Expenses | | $ 2,875. |
| Nurture to Children | | $11,300. |
| Total | | $111,720 |

### Survival Action

To this point I have dealt with the wrongful death aspects of this case. Hereafter, consideration will be given to the contentions made under the survival action.

No claim was advanced for pain or suffering or medical expenses. The decedent was killed instantly. However, plaintiff maintains that damages should be allowed for income and for investment appreciation resulting from certain real property which decedent owned and which was later sold. No such award was made at the last assessment in this court and the Circuit Court did not indicate the rejection of this element of damages was error. Moreover, any income from real estate was negligible as established by decedent's tax records.

■ Recovery should not be allowed for loss of investment income in the absence of a showing that decedent's intellectual and physical labor was the predominating factor in producing that income: Mars v. Meadville Telephone Company, 344 Pa. 29, 33, 23 A.2d 856 (1942). The only evidence to support this claim indicated that decedent painted and performed minor maintenance on the properties involved. The selection of the houses to be bought, their subsequent sale, and the collections of rent were entrusted to an agent.[7] Therefore, no award is made for any asserted loss of real estate income.

■ I have concluded that all of decedent's income was used for his support or was paid to his wife and family for their support. It follows that no damages can be awarded in the survival action.

### Pre-Judgment Interest

■ One more matter must be considered. Plaintiff asked that pre-judgment interest be awarded in view of the great amount of time that has elapsed since decedent's death. However, actions brought against the United States for damages caused by public vessels are controlled by statute, 46 U.S.C. § 781 et seq. Section 782 bars pre-judgment interest in suits against the United

---

7. Hearing of November 21, 1969, pp. 12–13.

States. This statutory prohibition means exactly what it says: Lauro v. United States, 163 F.2d 642 (2d Cir. 1947). Accordingly, this aspect of plaintiff's claim is denied.