Lucy **MALGREN**, Administratrix of the Estate of Wallace Kari, Deceased, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

No. M–74–74 C.A.

United States District Court, W. D. Michigan, N. D.

March 13, 1975.

Wisti & Jaaskelainen, Hancock, Mich., for plaintiff; Phillip L. Kukkonen, Hancock, Mich., of counsel.

Robert Greene, Asst. U. S. Atty., Grand Rapids, Mich., for defendant; Foster, Meadows & Ballard, Detroit, Mich., of counsel.

## OPINION AND ORDER

FOX, Chief Judge.

This is a complaint in admiralty. Wallace Kari, now deceased, was a seaman in the United States Merchant Marine, employed at the time of the injuries complained of as an ordinary seaman aboard the USNS "Cossatot," owned and operated by the defendant, the United States of America. It is alleged that on or about November 26, 1971, while the vessel was in navigable waters in the port of Houghton, Texas, Kari was seriously injured while in the course of his employment because of the negligence of the defendant, the unseaworthiness of the vessel, and the failure of the defendant to perform the duties of maintenance and cure. Kari died on July 27, 1972, in Ft. Lauderdale, Florida, allegedly solely because of the injuries sustained as a result of the defendant's negligence and the unseaworthiness of the vessel. Plaintiff, Lucy Malgren, is administratrix of the decedent's estate. As such, she claims $50,000, with costs and interest, for the estate. The action is brought under the Suits in Admiralty Act, 46 U.S.C. Sec. 741 et seq., and the Public Vessels Act, 46 U.S. C. Sec. 781 et seq. This court has jurisdiction to hear cognizable claims under 28 U.S.C. Sec. 1333.

The defendant has filed a Motion for Summary Judgment on the grounds that the suit is barred by the time limitations contained in the Public Vessels Act and the Suits in Admiralty Act. The case is before the court on this Motion.

■ The Public Vessels Act and the Suits in Admiralty Act operate as a waiver of sovereign immunity by the United States in cases to which they apply. Section 2 of the Public Vessels Act, 46 U.S.C. Sec. 782, incorporates by reference the limitation contained in Section 5 of the Suits in Admiralty Act, 46 U.S.C. Sec. 745. Section 5 of the latter Act provides, in pertinent part, "Suits . . . may be brought only within two years after the cause of action arises . . . ." It is undisputed that Section 5 controls this case.

■ The Complaint, Par. 10, states, "Plaintiff's decedent died on July 27, 1972, at Ft. Lauderdale, Florida, solely by reason of the negligence of the defendant and the unseaworthiness of the

vessel as set forth above." The court holds that this Paragraph, read with the rest of the Complaint, is sufficient under the Federal Rules to state, and does state, a cause of action for wrongful death.

Overruling previous cases, the United States Supreme Court in Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), held that an action for wrongful death based on failure to perform maritime duties is maintainable under the federal nonstatutory maritime law. Elaborating on Moragne, the Court held in Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), that the widow of a longshoreman may maintain such an action for the wrongful death of her husband after the decedent recovered damages in his lifetime for injuries. Moragne, as interpreted and applied in Sea-Land, "created a true wrongful-death remedy—founded upon the death itself and independent of any action the decedent may have had for his own personal injuries." 414 U.S. at 578, 94 S.Ct. at 811. The Court further observed in Sea-Land that the losses compensable in an admiralty wrongful death action "could not accrue until the decedent's death." Id. at 591–592, 94 S. Ct. at 818.

Both Moragne and Sea-Land were suits between private parties. Neither was like the suit here, an action against the United States permitted by the statutory waiver of sovereign immunity. A threshhold issue is whether the new maritime wrongful death action created by Moragne extends to suits against the United States.

The Public Vessels Act and the Suits in Admiralty Act have been given broad interpretation by the courts in accordance with the humanitarian objectives of Congress. The Supreme Court has stated that the Public Vessels Act "was intended to impose on the United States the same liability (apart from seizure or arrest under a libel in rem) as is imposed by the admiralty law on the private shipowner . . . ." Canadian Aviator, Ltd. v. United States, 324 U.S. 215, 228, 65 S.Ct. 639, 646, 89 L.Ed. 901 (1945). See also, Weyerhauser S. S. Co. v. United States, 372 U.S. 597, 600, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963); American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947).

In 1960, Congress amended the Suits in Admiralty Act to delete the restriction of the benefits of that Act to those injured by United States "merchant vessels." The Congress provided instead, "In cases where if such vessel [owned by the United States] were privately owned or operated . . . , or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States . . .." Pub.L. 86–770, 74 Stat. 912, 46 U.S.C. Sec. 742.

In a suit involving the complex relationship between the Federal Tort Claims Act and the Suits in Admiralty Act, the Fifth Circuit held that the 1960 amendment contained a further waiver of the Government's sovereign immunity. De Bardeleben Marine Corp. v. United States, 451 F.2d 140 (5th Cir. 1971). The Court relied upon the "words of the [1960] statute, its legislative history, the liberal approach in interpreting waivers of immunity, and the senseless absurdities which would result" if the Government's restrictive interpretation of the amendment were adopted. Id. at 145.

The Ninth Circuit has recently observed that most courts have interpreted the 1960 amendment to the Suits in Admiralty Act "as a legislative attempt to bring all maritime torts asserted against the United States within the purview of the [Act]." Roberts v. United States, 498 F.2d 520, 525 and cases there cited (9th Cir. 1974), cert. applied for, 43 U. S.L.W. 3214 (Oct. 3, 1974). In the case before it, the Court went on to hold "that the Suits in Admiralty Act, as amended, encompasses aviation wrongful death actions against the United States arising under the general maritime law

or under the Death on the High Seas Act [46 USC Sec. 761 et seq.]." 498 F. 2d at 526.[1]

Thus the courts have consistently held that Congress intended to impose upon the United States both a standard of liability and measure of damages in admiralty co-extensive with those of private parties in analogous situations, except insofar as such liability is clearly and expressly restricted by statute. By directly relating the standard of governmental liability and the measure of damages to those of private parties, the Congress necessarily rejected a static law for the United States. The Congress anticipated that the federal courts, which have a common law jurisdiction in admiralty under the general statutory grant, might alter the law applicable to private parties in light of accumulated experience. Congress intended that the law of governmental liability in admiralty keep pace with modern developments in private admiralty law without additional legislation, unless an extension of private law rules was expressly foreclosed.[2]

In Moragne itself, the Supreme Court overruled The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), which has held that the maritime law does not afford a cause of action for wrongful death. After a careful examination of the whole subject, the Court concluded that the rule of The Harrisburg, "somewhat dubious even when rendered, is such an unjustifiable anomaly in the present maritime law that it should no longer be followed." 398 U.S. at 378, 90 S.Ct. at 1776. The Court also observed, "Where death is caused by the breach of a duty imposed by federal maritime law, Congress has established a policy favoring recovery in the absence of a legislative direction to except a particular class of cases." Id. at 393, 90 S.Ct. at 1783. The same general Congressional policy and many of the same absurdities in the old law which compelled the Court to overrule The Harrisburg counsel the extension of the rule of Moragne to statutory wrongful death actions against the United States.[3]

The court holds that the Suits in Admiralty Act, as amended, and the Public Vessels Act comprehend wrongful death actions as in general maritime law against the United States. The court further holds that a cause of action for wrongful death against the United States "arises" on the date of death. 46 U.S.C. Sec. 745.

The plaintiff's decedent died on July 27, 1972, and the Complaint was filed on July 3, 1974. The court holds that this Complaint, stating a cause of

---

1. See also, Mascuilli v. United States, 343 F. Supp. 439 (E.D.Pa.1972), rev'd. on other grounds, 483 F.2d 81 (3d Cir. 1973).

2. Application of Moragne, supra, to suits in admiralty against the federal government would alter both the standard of liability and the measure of damages in some cases. Under pre-Moragne law, whether the defendant was strictly liable for death caused by the unseaworthiness of the offending vessel in state territorial waters depended upon the terms of the relevant state wrongful death statute as construed by the state courts. The Gungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959). In Moragne, the Supreme Court held that an action lies under general maritime law for death caused by violation of maritime duties, including the absolute duty to provide a seaworthy vessel. Thus, if the Moragne rule were extended to suits against the United States, the standard of liability would be al-

tered where the previously relevant state wrongful death statute did not adopt the strict liability for unseaworthiness standard. See, e. g., Moragne. By the same process, the measure of damages might be altered in some cases.

3. If this case were to proceed on pre-Moragne law, there would be many complicated questions. The plaintiff's decedent was injured in Texas and died in Florida. Which wrongful death statute would apply for the purpose of determining whether a time limitation had run, see Allen v. United States, 338 F.2d 160 (9th Cir. 1964), or for the purpose of determining the duty owed, see Vancouver S.S. Co. v. Rice, 288 U.S. 445, 53 S.Ct. 420, 77 L.Ed. 885 (1933); cf., Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), or for the purpose of determining the measure of damages?

action for wrongful death, is not barred by the statute of limitations. 46 U.S.C. Sec. 745.

The court further holds that the plaintiff, as administratrix of the decedent, is a proper party to bring the action. Futch v. Midland Enterprises, Inc., 471 F.2d 1195 (5th Cir. 1973).

The court reserves judgment on whether the plaintiff may seek or recover damages for the pain and suffering of the decedent, Greene v. Vantage Steamship Corp., 466 F.2d 159 (4th Cir. 1972), or whether such damages are barred by the statute of limitations. See 2 Harper & James, The Law of Torts, Sec. 24.7 (1957).

The parties are advised to consult closely the case of Complaint of Cambria Steamship Co., 505 F.2d 517 (6th Cir. 1974), in which the Court announced principles which may be controlling in this case.

It is ordered that the defendant's Motion for Summary Judgment is hereby denied.