James E. BREWER,
Plaintiff-Appellant,

v.

E. J. PLATT FISHERIES, INC.,
Defendant-Appellee.

No. 74–2055.

United States Court of Appeals,
Fifth Circuit.

April 11, 1975.
Rehearing Denied May 13, 1975.

J. Mack Varner, Vicksburg, Miss., for plaintiff-appellant.

William G. Beanland, Vicksburg, Miss., for defendant-appellee.

Before GEWIN, AINSWORTH and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

This is an action for damages for maritime personal injury. On May 17, 1971, the motor vessel LOGAN P, a 38-foot-long, 14½-foot-wide motor vessel with a draft of 4 feet at full speed, owned by E. J. Platt Fisheries, Inc. [Contractor] and chartered by the United States Corps of Engineers, struck a submerged sandbar in the Mississippi River. As a result of the collision James E. Brewer, a member of a survey team of the Corps of Engineers, was thrown from a chair in which he was seated causing him to sustain serious personal injuries. Plaintiff filed this suit in maritime tort against the Contractor, alleging negligence of its employee Cecil Leon Parker, the operator of the vessel. The district judge, sitting without a jury, found for defendant and plaintiff appealed.

There are two issues to decide: (1) Was the trial judge clearly erroneous in finding no actionable negligence on the part of the boat operator? (2) Did the trial judge misinterpret the contract be-

tween the Government and Contractor in concluding that under its terms the defendant assumed no responsibility of liability to a Government employee aboard the vessel? We answer both questions in the affirmative and reverse.

There were six people aboard the LOGAN P on the day of the accident. James E. Brewer, plaintiff, Parker Boggan and Perry Young, employees of the Corps of Engineers, along with David Cobianchi and Hugh McClendon, employees of Odom's Offshore Survey, Inc., constituted the survey team whose mission was to conduct hydrographic surveys of the bed of the Mississippi River. Cecil Leon Parker, an employee of defendant Contractor, was the operator of the boat.

On the morning in question the survey party chief, Perry Young, directed Parker to put the boat on a speed run as it left its mooring at Point Pleasant, Louisiana. The decision of which course to take was left to Parker. There was no traffic on the river and visibility was good as the LOGAN P ascended the east side of the navigation channel of the river at full throttle (about 17 to 19 miles per hour) proceeding toward its destination approximately 6 miles upstream. A few miles up the river from Point Pleasant, in the vicinity of Davis Island Bend, there is a large sandbar. Fingers or crests of sand running from it build up quickly in this area because of the current, creating constant changes in the river bed and a hazard to navigation. The United States Coast Guard has marked the east ascending side of the channel with red buoys to warn navigators of these hazards lying outside the buoy line between it and the east bank. Parker was aware of the red buoys and of their significance. When the vessel approached this stretch of the river it suddenly came to an abrupt halt as it collided with a part of the submerged sandbar, causing Brewer to be thrown violently from his chair 6 to 8 feet against a life jacket box. Parker immediately pulled the throttles back and the boat drifted several hundred feet downstream. After checking the engine and ascertaining that it had not been damaged, Parker steered the vessel back to the area in which he thought the accident had occurred in an unsuccessful attempt to locate two batteries which had fallen into the river with the impact.[1]

All of the men aboard the LOGAN P at the time of the accident testified. Brewer and Boggan testified that just prior to the impact the vessel had left the channel and moved upstream to the east. McClendon and Boggan testified that when they returned to the site at which the impact was thought to have occurred the vessel was outside the channel. With the exception of Parker, the operator, all of the men aboard testified that as the boat drifted downstream after the collision it was outside of the channel to the east. Parker did not know whether the vessel was in the channel or not when it hit the sandbar.

The district judge in his findings estimated that the boat at the time of collision was operating at a distance of 75 to 100 feet outside the channel on the Mississippi (or east) side of the river, with full throttle, in approximately 5 to 6 feet of water. He also found that the object which the boat struck was a piece of firm land extending as a finger from the island. Despite these findings, which are substantiated by the record, the district judge concluded that the evidence failed to show with any degree of clarity or

1. There is a conflict in the evidence in regard to the depth of the water where the probing for the lost batteries took place. The testimony of those witnesses who approximated the depth was that the water was from 5 to 6 feet deep. The district judge accepted these estimates. Appellant attempts to show from the hydrographic survey that there was at least 15 feet of water at the site. We find this variance immaterial for two reasons. No one knew whether the boat after drifting downstream returned to the precise point of the impact; on the other hand, the evidence overwhelmingly shows that regardless of the depth of the water at the site, the boat was outside of the channel prior to the impact, while drifting downstream after the impact and at the time that the men were attempting to retrieve the batteries.

conviction that the operator of the boat was guilty of negligence which proximately caused the accident.

[1] The standard of care in maritime cases is one of reasonableness. See Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), in which the Supreme Court said:

> It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.

358 U.S. at 630, 79 S.Ct. at 409, and further emphasized this principle by reiterating:

> [T]he owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case.

358 U.S. at 632, 79 S.Ct. at 410.[2]

■ Under the particular circumstances presented here, considering all of the evidence, particularly the speed of the vessel and the course pursued by its operator with full knowledge of the hazards created by shifting sand formations in the area and in apparent disregard of the warnings of the Coast Guard, we are left with a definite and firm conviction that the district court was clearly erroneous in failing to find that the boat operator was derelict in his duty to exercise reasonable care and that his negligence was the proximate cause of the accident.[3] See McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed.

20 (1954); Chaney v. City of Galveston, 5 Cir., 1966, 368 F.2d 774.

The only remaining issue is whether the contract between the Government and defendant immunized the defendant from liability. The district court found that the Contractor's responsibility in case of an accident is fixed by Article 5 of the contract, but interpreted the clause in favor of defendant. We pretermit the question of whether an agreement, which would have the effect of exempting the boat owner from liability caused by the negligence of its employee, would be repugnant to public policy, inasmuch as this is not such an agreement. Article 5 reads in pertinent part:

> Contractor's responsibility. The Contractor shall be responsible that his employees strictly comply with all Federal, State, and municipal laws that may apply to operations under the contract; and it is understood and agreed that the Contractor assumes full responsibility for the safety of his employees, plant, and materials and for any damage or injury done *by* or to them from any source or cause, except damage caused to plant or equipment by acts of the Government, its officers, agents or employees, in which event such damages will be the responsibility of the Government in accordance with applicable federal laws.
> . . . (Emphasis supplied.)

■ The district judge held, in interpreting Article 5 that, "Under this contract if there had been any actionable negligence on the part of this operator, *and if an employee of the defendant had sustained an injury,* then the injured

---

2. See also Branch v. Schumann, 5 Cir., 1971, 445 F.2d 175, 178.

3. Defendant contends that according to a judicially recognized custom an ascending vessel "runs the points" avoiding the current as far as possible, and a descending vessel "runs the bends," citing John D. Rockefeller, 4 Cir., 1921, 272 F. 67, and Bisso Towboat Co. v. United States, 5 Cir., 1925, 6 F.2d 132, and that the boat operator was running the points at the time of the accident. The record, however, is devoid of any testimony by Parker that he was aware of such a custom; he was

not questioned in this regard. Moreover, there was no impending danger of collision with another vessel to cause Parker to deviate from the safer channel course to a hazardous course clearly marked by channel buoys. The defense suggests that the trial court discredited the testimony of the five witnesses who placed the position of the vessel outside of the channel. The finding of the trial court belies such an assumption. It specifically found the boat to be 75 to 100 feet east of the channel.

party would have incurred a loss which the defendant would have possible liable under the terms of its contract. [sic]" (Emphasis supplied.) It is obvious from a reading of that holding in conjunction with Article 5 that the district judge inadvertently disregarded the word "by" in the phrase "for any damage or injury done by or to them from any source or cause." We find no ambiguity in Article 5; it explicitly fixes defendant's responsibility for injuries done by its employees to others as well as to its own employees.[4]

We conclude, therefore, that the district judge clearly erred in finding that Parker was not guilty of negligence and that defendant was not liable under the contract for the damages sustained by plaintiff because of that negligence.

Reversed and remanded.

---

4. Counsel for defendant conceded in oral argument that if defendant Platt was negligent it is responsible in damages to whomever it injures as a result of that negligence.