ALICE RICHARDSON, suing as Personal Representative for
ROBERT H. WISEMAN, Deceased, Plaintiff

v.

EDWARD O'BRIEN, O'BRIEN PLUMBING CO., INC.,
VESSEL VI 7363-T, JULIE H. NICHOLSON, Defendants

Civil No. 77-219

District Court of the Virgin Islands

Div. of St. Thomas and St. John

May 22, 1980

 

██

RONALD T. MITCHELL, ESQ. (PALLME, ANDUZE, MITCHELL & DOW), St. Thomas, V.I., *for plaintiff*

RICHARD H. HUNTER, ESQ. (ISHERWOOD, ALKON, BARNARD & DIEHM), St. Croix, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

This case is presently before the Court for determination after trial. Plaintiff also moves for our reconsideration of a prior order dismissing her general maritime claim or in the alternative she seeks a new trial. Fed. R. Civ. P. 60(b), 59.

 Upon reconsideration we determine that this Court possesses general maritime jurisdiction in the case sub judice.[1] See Moragne v. States Marine Lines, Inc., 398 U.S. 375 (1970); Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 (1959); Edynak v. Atlantic Shipping Inc., 562 F.2d 215 (3d Cir. 1977). Therefore our prior order[2] dismissing for lack of general maritime jurisdiction is vacated. Fed. R. Civ. P. 60(b).

The trial was held without a jury on October 16–18, 1979. After both parties rested and argument was heard the Court announced its findings of fact. The present posture of the case requires supplementary findings of the facts and conclusions of law.

During closing arguments both counsel focused on the issue of whether O'Brien Plumbing Corp. (hereinafter O'Brien or O'Brien Plumbing) owed a duty to the deceased, Wiseman. Plaintiff asserted that O'Brien Plumbing owed anyone on its boat a high standard of care. Defendant contended that Wiseman as a licensee[3] was only owed a duty of reasonable care and then only if the deceased was unaware of the dangers involved in sinking the boat. See RESTATEMENT (SECOND) OF TORTS § 341; Rich v. United States, 596

---

[1] Further discussion is not necessary since all parties concede maritime jurisdiction.

[2] Richardson v. O'Brien, Civ. No. 77/219 Order, Oct. 18, 1979 (D.V.I.).

[3] In Kermarec v. Compagnie Generale Transatlantique, 358 U.S. at 630-31, the Court addressed the question of whether admiralty recognized the same distinctions between an invitee and a licensee as does the common law. The Court held that such land oriented status distinctions were unwarranted in admiralty.

F.2d 541 (3d Cir. 1979). Contra Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 at 630.

There is no question but that O'Brien Plumbing was negligent, rather the question is "whether the plaintiff's interests are entitled to legal protection against defendant's conduct". Bradshaw v. Rawlins, App. Nos. 79-1409-1412 (3d Cir. decided Dec. 17, 1979). That duty may be perceived as a legal obligation of one person (O'Brien Plumbing) to conform to a standard of conduct with respect to another person (Wiseman). Id.

■ A shipowner owes a reasonable duty of care to all those aboard his vessel. Pastore v. Taiyo Gyogyo, K.K., 571 F.2d 777, 781 (3d Cir. 1978); Brewer v. E. J. Platt Fisheries, Inc., 511 F.2d 182, 184 (5th Cir. 1975). O'Brien failed to provide such reasonable care to Wiseman. Defendant had no knowledge or expertise in sinking ships. Yet Mr. O'Brien had guests aboard his boat when he undertook a task for which he was ill prepared.

■ Section 297 of the RESTATEMENT (SECOND) OF TORTS[4] provides in part:

> (a) a negligent act may be one which involves an unreasonable risk of harm to another
>
> . . .
>
> (b) but only if it is done without reasonable care, competence, preparation or warning.

O'Brien Plumbing sank the Jolly Rogers in an unreasonably negligent manner. It was done without proper foresight, competence, preparation or care. O'Brien was determined to sink the boat in any way possible after the attempts to accomplish this by dynamiting failed. It takes little common sense, however, to realize that sinking a ship while sitting aboard it drinking champagne is reckless behavior. The testimony of Mr. Ogley and Mr. Henderson made clear that there were safer methods of sinking the craft which might have been pursued.[5] No grave emergency existed which would serve to condone such negligent behavior.

Mr. Wiseman, however, was also negligent. As an adult he had a responsibility to care for himself. It was unreasonable for him to

---

[4] While this Court realizes that the RESTATEMENT (SECOND) OF TORTS has no direct bearing on the law of admiralty, see Kermarec supra, we find it helpful in determining the requisites of negligence.

[5] While it may have been more costly, O'Brien could have delayed sinking the barge until more dynamite could be obtained or the ship was thoroughly searched for through holes.

have stayed on the barge they were sinking, imbibing champagne all the while. It was also negligent for him to have ignored Mr. Dewey's signal to put life jackets on.

He was the very one to whom Dewey directly conveyed the word. Wiseman, however, simply smiled, and waved Dewey away. But besides all this Wiseman was a civil engineer. Indeed he seemed to know more of what the trio was attempting than did the other two.

It was Wiseman who, of the three men aboard the ROGERS, most frequently checked the water level of the vessel to determine when it would go down. His far superior technical knowledge served to strongly emphasize his marked lack of care for his own safety. In all the circumstances, his negligence must be deemed equal to that of O'Brien, and the Court so finds.

## DAMAGES[6]

Under general maritime law plaintiff may recover damages for the loss of financial support from her husband, Moragne v. States Marine Lines, Inc., 398 U.S. 375 (1970); the loss of her husband's personal services, Mascuilli v. United States, 343 F.Supp. 439, 442 (E.D. Pa. 1972), rev'd on other grounds 483 F.2d 81 (3d Cir. 1973); the loss of her husband's society, Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 587; also her husband's funeral expenses, and his pain and suffering prior to death, as well. See Sea-Land Services, Inc., 414 U.S. at 591; Thompson v. Offshore Co., 440 F.Supp. 752 (S.D. Tex. 1977). Plaintiff, however, may not recover for her mental anguish and grief caused by her spouse's demise. Sea-Land Services, Inc., 414 U.S. at 585 n.17; 2 Benedict on Admiralty § 86 at pp. 7-50–51 (7th ed. 1975).

## A. LOSS OF SUPPORT

In order to determine a compensatory figure for loss of support the court must consider the decedent's income prior to death, his health, work habits, prospects for advancement, personal expenses,

---

[6] The Court feels compelled to make the comment that on the whole, proof of damages was often lacking, and when present was proffered in a somewhat haphazard fashion. In large measure this may have been due to a failure in communicating legal concepts of damages to the expert, or else in the inability of the expert witness to relate such ideas to his discipline. Whatever the cause, the Court has been severely hampered in addressing this aspect of the case, with possible adverse effects to plaintiff.

inflation[7] and taxes. Sea-Land Services, Inc., 414 U.S. at 584; 2 Benedict on Admiralty at 7-44; see Norfolk & Western Railway Co. v. Liepelt, 444 U.S. 490 (1980). Decedent's wage income as evidenced by his tax returns for the five years prior to his death is as follows:

| | |
|---|---|
| 1970 | $3,493.34 |
| 1971 | $3,967.00 |
| 1972 | $6,916.00 |
| 1973 | $8,550.00 |
| 1974 | $7,500.00 |

Mrs. Wiseman testified that her husband earned $500.00 a week. However, she was not able to adequately demonstrate that Mr. Wiseman worked fifty-two weeks a year.[8] Therefore, the Court holds that from the time of death to date Wiseman would have had a net salary of $7,500. The Court also holds that Wiseman's future yearly salary would have been $8,550. This figure is based in part on past inflation and in part on Wiseman's future earning potential.

The decedent's personal expenses must be subtracted from his earnings in order to fairly compensate his survivors. Mrs. Wiseman testified that her husband had the following personal expenses on a yearly basis:

| | |
|---|---|
| Food | $1,200.00 |
| Clothing | 150.00 |
| Rent | 2,160.00 |
| Misc. | 550.00 |
| TOTAL | $4,060.00 |

In accordance with the testimony we hold that the decedent's personal expenses from the time of death to date was $4,060. We further conclude that Wiseman's future expenses would have been higher due to inflation and an increased salary. Such expenses would equal $4,550.

■ Included within loss of support is social security benefits. Dr. Jones-Hendrickson, plaintiff's economic expert, testified that Mr. Wiseman's life expectancy was 73.58 years. Wiseman would have received social security from age 65 until his projected death.

[7] This Court will only take into account inflation from the time of death until the present date.

[8] While we do not believe that Mr. Wiseman earned $25,000 a year we do not believe his gross salary was $7,500.00 either. The Court need not close its eyes to the fact that people sometimes grossly understate income on their income tax returns.

Testimony was introduced at trial calculating Wiseman's social security benefit. However it was not computed on a salary that we deem reasonable. Taking into account that Wiseman was not reporting his full income and that Social Security is based upon the highest thirty-five years of salary (reported income) we determine that his social security benefit would have been $32,978.[9]

■ Finally in order to determine loss of support the Court must multiply the aforementioned amounts by the 20 years of Wiseman's work life and then discount that number to its present value. During trial defendant asserted that a seven percent discount rate was fair. We will accept that judgment. The figures below have been discounted and reduced by personal expenses.

| | |
|---|---|
| August 1975 to date | $ 15,525.00 |
| Future earnings | 34,054.40 |
| Lost earnings | 49,579.40 |
| Social Security | 30,669.68 |
| TOTAL | $129,828.48 |

## B. LOSS OF SERVICES

■ Plaintiff testified that the decedent performed household maintenance services six to seven hours a week. One third of those services, according to Dr. Jones-Hendrickson, was solely attributable to the benefit of the decedent. We believe that replacement services would be compensated at the minimum wage.[10]

| | |
|---|---|
| August 1975 to date | $ 2,432.43 |
| Future replacement services[11] | 18,198.47 |
| Total replacement cost | $20,630.90 |

## C. LOSS OF SOCIETY

■ Plaintiff testified that she and the decedent had a happy marriage. They enjoyed each other's company and spent many hours together. We hold that plaintiff's damages for loss of society equals $65,000.00.

---

[9] We take judicial notice of the contents within HEALTH, EDUCATION, and WELFARE'S Social Security Benefit Manual & Tables. See Fed. R. Evid. 201(b).

[10] We take judicial notice of the standard minimum wage from the time of decedent's death until 1981.

[11] Future services has been discounted by 7%.

## D. FUNERAL EXPENSES

 No proof was submitted at trial as to funeral expenses and therefore no damages may be awarded.

## E. DECEDENT'S PAIN AND SUFFERING

 Under the general maritime law there is fairly universal agreement that an award is proper for the decedent's pain and suffering. See Robertson v. N. V. Stoomvaart Maatschappiji, 507 F.2d 994, 995 (5th Cir. 1975); Barbe v. Drummond, 507 F.2d 794, 799 (1st Cir. 1974); Dennis v. Central Steamship Corp., 453 F.2d 137 (5th Cir.), cert. denied 409 U.S. 948 (1972); Greene v. Vantage Steamship Corp., 466 F.2d 159 (4th Cir. 1972). However, in drowning cases the courts generally require evidence of a conscious struggle. Thompson v. Offshore Co., 440 F.Supp. 752, 761 (S.D. Tex. 1977); see 2 Benedict on Admiralty at 7-53. Plaintiff was unable to offer any specific proof that her husband struggled before drowning.

In the nature of things generally, and of this case in particular, direct evidence of any struggle by decedent was hardly a likely possibility. Yet it is a fair inference to conclude that he must necessarily have battled furiously to survive what surely must have been a most horrifying ordeal. We know from the testimony that he enjoyed scuba diving and related aquatic sports. We may say, therefore, that he was a competent swimmer. The medical testimony makes clear that the cause of death was drowning, and that no evidence of trauma, prior to his entering the water was found on his body. Thus we effectively eliminate the possibility that he was struck by the small boat, the pump, or any object in a manner which would have rendered him unconscious. Being conscious, then, there can be no doubt that he struggled. The law of self preservation completely rules out any other conclusion. As it became evident to Wiseman that he was trapped in the hold of the vessel, where his body was ultimately found, the more intense would have been his fight to reach the surface. In his last conscious moments, above all, when Wiseman knew his "striving would be losing" his pain and suffering assumed proportions beyond human endurance, and it was in that terrifying state of mind that he died.

 On the foregoing, damages will be awarded for the decedent's pain and suffering in the amount of $35,000.00.

## F. SUMMARY

In conclusion, plaintiff suffered the following damages:

| | |
|---|---|
| Loss of support | $ 80,249.08 |
| Loss of services | 20,630.90 |
| Loss of society | 65,000.00 |
| Funeral expenses | none |
| Decedent's pain & suffering | 35,000.00 |
| Total | $200,879.98 |

However since, as we have found, the contributory negligence of plaintiff's decedent equalled that of defendant, the award will be reduced by fifty percent.

