Laurence F. KELLY, as Administrator of the Estate of Richard C. Kelly, Appellant,

v.

UNITED STATES of America, Appellee.

No. 268, Docket 75–6043.

United States Court of Appeals, Second Circuit.

Argued Nov. 19, 1975.

Decided March 8, 1976.

Victor J. Ciabotti, Oot, Setright & Ciabotti, Syracuse, for appellant.

Alfred H. O. Boudreau, Jr., Atty., Admiralty and Shipping Section, Dept. of Justice, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., Washington, D. C., James M. Sullivan, Jr., U. S. Atty., Syracuse, N. Y., Morton Hollander, Atty. Dept. of Justice, Washington, D. C.), for appellee.

Before MOORE and TIMBERS, Circuit Judges, and COFFRIN,* District Judge.

COFFRIN, District Judge:

This case arises from the drowning death of Richard C. Kelly on September 4, 1970 near Sodus Point, New York, on Lake Ontario following the capsize of a 19-foot sailboat on which Mr. Kelly and three companions had embarked for a pleasure trip. The plaintiff, decedent's administrator, contends that the United States Coast Guard was negligent in failing to rescue Mr. Kelly and in causing other would-be rescuers not to come to his aid.

Plaintiff filed a claim for settlement with the Coast Guard on August 31, 1972, as provided by 28 U.S.C. § 2672, the administrative adjustment provision of the Federal Tort Claims Act (FTCA), but his claim was denied on October 30, 1972. Plaintiff then filed a timely complaint against the United States in the Northern District of New York on March 13, 1973, as provided by 28 U.S.C. § 1346(b), which gives the District Courts exclusive jurisdiction of claims under the FTCA. The complaint was dismissed from the bench by Judge Port on April 14, 1975 on the grounds of lack of subject matter jurisdiction. Judge Port ruled that plaintiff's suit was not cognizable under the FTCA since it stated an admiralty claim against the Government which was cognizable exclusively under the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (SIAA).[1] Because the SIAA contains a strict two-year statute of limitations[2] which was not timely tolled by the plaintiff, the judgment of the District Court, if upheld, would leave the plaintiff without remedy.

The plaintiff contends on appeal that: (1) his complaint does not state a claim in admiralty; and (2) if the complaint does state an admiralty claim, it is nevertheless not the type for which a remedy is provided by the SIAA; and that (3) in either case, suit under the FTCA is proper. These contentions are discussed below.

---

* Honorable Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

1. 28 U.S.C. § 2680(d) makes it clear that tort claims which can be brought against the United States under the SIAA, 46 U.S.C. §§ 741–752, cannot be brought against the government under the Federal Tort Claims Act. Section 2680(d) provides that the FTCA does not apply to "[a]ny claim for which a remedy is provided by sections 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States."

2. 46 U.S.C. § 745.

## ADMIRALTY TORT JURISDICTION GENERALLY

The test of admiralty tort jurisdiction has been recently modified by the Supreme Court in *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Prior to *Executive Jet*, a "locality" test was strictly applied, and if the "substance and consummation" of the wrong and injury complained of occurred upon navigable waters, admiralty jurisdiction was upheld. *The Plymouth*, 3 Wall 20, 35, 36, 18 L.Ed. 125, 128 (1866). Under the older test there is no doubt that plaintiff's claim would have been cognizable in admiralty, since the complaint alleges a wrongful drowning in the navigable waters of Lake Ontario. We believe that plaintiff's claim is also within admiralty jurisdiction under the new test of *Executive Jet.*

*Executive Jet* involved the crash of a jet airliner immediately following take-off from Burke Lakefront Airport in Cleveland, Ohio. The aircraft struck a flock of seagulls, lost power, and fell into the navigable waters of Lake Erie, only a short distance from the runway. Admiralty jurisdiction was invoked in the ensuing negligence case under the test of *The Plymouth, supra,* but the Court chose not to follow that test. The Court discussed the anomalous results that can follow from applying a strict locality test of maritime tort jurisdiction in "perverse and casuistic borderline situations", *Executive Jet, supra,* 409 U.S. at 255–259, 93 S.Ct. at 498, 34 L.Ed.2d at 459, and observed that "in determining whether there is admiralty jurisdiction over a particular tort or class of torts, reliance on the relationship of the wrong to traditional maritime activity is often more sensible and more consonant with the purposes of maritime law than is a purely mechanical application of the locality test." *Ibid* at 261, 93 S.Ct. at 501, 34 L.Ed.2d at 463. In line with those observations the Court enunciated, at least for aviation tort cases, a new "locality *plus*" test:

> [W]e conclude that the mere fact that the alleged wrong "occurs" or "is located"

on or over navigable waters—whatever that means in an aviation context—is not of itself sufficient to turn an airplane negligence case into a "maritime tort." It is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity. We hold that unless such a relationship exists, claims arising from airplane accidents are not cognizable in admiralty in the absence of legislation to the contrary. *Ibid.* at 268, 93 S.Ct. at 504, 34 L.Ed.2d at 467.

Plaintiff contends that under the *Executive Jet* test, two critical aspects of his complaint require a conclusion that the wrongs alleged *do not* "bear a significant relationship to traditional maritime activity": (1) the fact that the alleged wrongful acts and omissions of the Coast Guard took place on land, not on navigable waters, and (2) the fact that these acts and omissions related to the rescue of private persons engaged in pleasure-boating rather than commercial vessels engaged in maritime activities. We disagree.

▮ The mere fact that land-based acts or omissions may have contributed to the drowning in this case does not alone preclude admiralty jurisdiction. *Executive Jet* did not reject the traditional rule that "where the negligent act originates on land and the damage occurs on water, the cause of action is within the admiralty jurisdiction." *In re Motor Ship Pacific Carrier*, 489 F.2d 152, 157 (5th Cir. 1974); see also, *Oppen v. Aetna Ins. Co.*, 485 F.2d 252, 256 (9th Cir. 1973); *Szyka v. United States Secretary of Defense*, 525 F.2d 62, 64, Docket No. 75–6003, (2d Cir. 1975). *Executive Jet* merely adds to this rule the additional requirement that the acts and omissions must significantly relate to traditional maritime activity.

▮ Also, the fact that a recreational sailboat was involved in this case does not necessarily preclude admiralty jurisdiction. There has been debate on the subject, but

the Circuit Courts have generally not taken the view, urged by at least one commentator,[3] that admiralty jurisdiction is closed to all claims arising from pleasure boat accidents. On the contrary, admiralty jurisdiction has been upheld in a variety of recent cases involving pleasure boat accidents. *Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973) ("a mini ship-to-shore gun battle in the Mississippi River" between "fleeing deer poachers afloat" in a 15-foot outboard runabout and "outraged defenders of a private hunting preserve ashore"); *St. Hilaire Moye v. Henderson*, 496 F.2d 973 (8th Cir. 1974) (pleasure-boat accident on a navigable portion of the Arkansas River); *Oppen v. Aetna Ins. Co.*, 485 F.2d 252 (9th Cir. 1973) (oil spill in the Santa Barbara channel resulting in damage to pleasure boats). This Court has recently agreed that suits involving pleasure craft are not precluded by *Executive Jet* from admiralty jurisdiction, unless the wrongs alleged do not "bear a significant relationship to traditional maritime activity." *Szyka v. United States Secretary of Defense, supra.*[4] Although the Fourth Circuit appeared initially in *Crosson v. Vance*, 484 F.2d 840 (4th Cir. 1973) to have adopted a somewhat broader interpretation of *Executive Jet*, holding that admiralty jurisdiction did not reach the negligence claim of a water skier against a towing motor boat operator, the Circuit has more recently ruled that the negligence claim of a pleasure boat passenger is cognizable in admiralty. *Richards v. Blake Builders Supply*, 528 F.2d 745, Docket No. 74–2010 (4th Cir. 1975).[5]

We believe, in any case, that this suit is not merely a "pleasure boat accident case." In fact, the case only tangentially involves boats at all. It primarily involves water rescue operations. The objects of the rescue could just as well have been fatigued swimmers as capsized boaters. The critical question, therefore, is not, as both parties have tended to frame it, whether pleasure boat cases fall within admiralty, but rather whether rescue cases involving the United States Coast Guard fit within this category. Viewing the case in this way, we conclude that rescue operations of the Coast Guard conducted on navigable waters do in fact bear a significant relationship to traditional maritime activities for purposes of admiralty jurisdiction.

The Coast Guard, among other duties, is charged with enforcing "all applicable Federal laws on and under the high seas and waters subject to the jurisdiction of the United States," promulgating and enforcing "regulations for the promotion of safety of life and property on . . . the high seas and waters subject to the jurisdiction of the United States" and developing, establishing, maintaining and operating "aids to maritime navigation . . . and rescue facilities for the promotion of safety." 14 U.S.C. § 2. With regard to rescue operations specifically the Coast Guard is authorized, though not obligated, "to render aid to distressed persons, vessels, and aircraft on and under the high seas and on and under the waters over which the

---

**3.** Stolz, *Pleasure Boating and Admiralty: Erie at Sea*, 51 Cal.L.Rev. 661 (1963).

**4.** *Szyka* involved a *pro se* complaint against the United States Secretary of Defense, which alleged a "shelling close to plaintiff and his family in their boat in Long Island Sound from some military installation 'in furtherance of a conspiracy on the part of unnamed government officials to threaten and intimidate him.' " The Court, in affirming a dismissal of the complaint for untimeliness under both the FTCA and the SIAA, stated in passing that "shelling from shore allegedly injuring passengers in a pleasure boat would rather plainly bear a significant relationship to traditional maritime activity." *Szyka, supra*, 525 F.2d at 64.

**5.** In *Richards*, Chief Judge Haynsworth distinguished the position he had taken in *Crosson*, concluding that the Supreme Court in *Executive Jet* had expressly disapproved of admiralty jurisdiction in water-skier cases such as *Crosson, Executive Jet, supra*, 409 U.S., 255 at 256 n.5, 93 S.Ct. at 498, 34 L.Ed.2d at 459, but that it had not rejected its prior approval of admiralty jurisdiction in pleasure boat cases generally. *See, Levinson v. Deupree*, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); *Coryell v. Phipps*, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943).

United States has jurisdiction" and to "perform any and all acts necessary to rescue and aid persons and protect and save property." 14 U.S.C. § 88(a)(1). It would be impossible to find an agency of our government with a closer relationship to maritime activity. Certainly, there is a definite federal interest in providing a forum and a uniform body of law for the adjudication of claims against the Coast Guard concerning its rendering of aid to persons and vessels in distress on navigable waters.

## SCOPE OF SUITS IN ADMIRALTY ACT

Having concluded that plaintiff's complaint states an admiralty claim, we must now decide whether it is the type of admiralty claim against the United States which must be brought exclusively under the SIAA within the two year limitation period. Prior to 1960, this case would not have been cognizable under the SIAA, since maritime tort proceedings against the government which did not involve either "vessels" or "cargoes" of the United States were not then covered by 46 U.S.C. § 742. Accordingly, wrongful death actions against the Coast Guard for allegedly negligent rescue operations occurring prior to 1960 were brought without objection under the FTCA, not under the SIAA. *United States v. De-Vane*, 306 F.2d 182 (5th Cir. 1962); *United States v. Gavagan*, 280 F.2d 319 (5th Cir.

1960), *cert. denied*, 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365 (1961); *United States v. Lawter*, 219 F.2d 559 (5th Cir. 1955).

However, Section 742 was amended in 1960 to include the following emphasized language:

> In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or *if a private person or property were involved*, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States . . .

Appellant argues that, in spite of the plain meaning of the emphasized language in the statute, the amendment was intended only to clarify certain unrelated ambiguities and was not designed to permit admiralty suits against the government where government cargoes or vessels are not involved.

 We agree with appellant that the legislative history of the 1960 amendment (S.R.No.1894, 1960 U.S.Code Cong. & Admin.News, p. 3583 et seq.) does not expressly or clearly state a congressional purpose to bring all maritime claims against the U.S. into the admiralty jurisdiction of the district courts.[6] Nevertheless, in the absence of clear legislative direction or persuasive reasons to the contrary, we are obliged to construe statutory language in a manner consistent with its plain and ordi-

---

**6.** Read narrowly, the Senate Report might actually indicate a purpose *not* to expand the then existing jurisdiction of the district courts under 46 U.S.C. § 742. The Report states that the main purpose of the 1960 Amendment was as follows:

> . . . to prevent the repetition of misfilings [of suits in the wrong court] in the future. It *restates* in brief and simple language *the now existing* exclusive *jurisdiction* conferred on the district courts, both on their admiralty and law sides, over cases against the United States which could be sued on in admiralty if private vessels, persons, or property were involved." (emphasis added) 1960 U.S.Code Cong. & Admin.News, p. 3583.

However, there is language in the Senate Report which shows that Congress was aware that the language added to § 742 by the 1960 amendment would expand maritime jurisdiction under that Section to its limits:

> With respect to the amendment to the [SIAA] . . . the original . . . Act authorizes a suit against the United States whenever an admiralty proceeding could have been maintained if private vessels or cargo vessels were involved, but it does not mention private persons and property generally. 1960 U.S.Code Cong. & Admin.News, pp. 3585–3586.

Reading this observation against the actual wording changes that were made in the 1960 amendment, it would be illogical to conclude that Congress did not intend, as stated by the Fifth Circuit, "to assimilate the Government to the private person in relation to any or all transactions giving rise to liability in the Admiralty." *DeBardeleben Marine Corp. v. United States*, 451 F.2d 140, 145 (5th Cir. 1971).

nary meaning. *Burns v. Alcala*, 420 U.S. 575, 580–581, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469, 475 (1975). With this axiom in mind, we must conclude that the 1960 amendment to 46 U.S.C. § 742 (Pub.L. 86–770) was intended to bring all admiralty claims against the United States within the ambit of the SIAA, whether or not involving government cargoes or vessels. This conclusion is in full accord with the views expressed in the Per Curiam opinion in *Szyka v. United States Secretary of Defense*, 525 F.2d 62, 64, n. 5 Docket No. 75–6003 (2d Cir. 1975), as well as with the weight of authority. *T. J. Falgout Boats, Inc. v. United States*, 361 F.Supp. 838, 841–42 (C.D.Cal.1972), *aff'd*, 508 F.2d 855 (9th Cir. 1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975); *Roberts v. United States*, 498 F.2d 520, 525 (9th Cir. 1974), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). *DeBardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir. 1971); *Richmond Marine Panama, S.A. v. United States*, 350 F.Supp. 1210, 1212, 1219–20 (S.D.N.Y.1972).[7] Further, our conclusion is not inconsistent with the broad interpretation of the 1960 amendment made by this Court in *Ira S. Bushey & Sons, Inc. v. United States*, 398 F.2d 167, 169 (2d Cir. 1968), where it was said that the purpose of the amendment was to avoid "fruitless jurisdictional controversies and [to bring] all maritime claims against United States vessels into the admiralty jurisdiction of the district courts."

For the reasons expressed above, we hold that decedent's claim should have been brought under the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, and it cannot be maintained under 28 U.S.C. § 1346(b) because of the express prohibition of 28 U.S.C.

§ 2680(d). The suit is therefore barred by the provisions of 46 U.S.C. § 745, as it was not commenced under the Suits in Admiralty Act within two years of the date that the cause of action accrued. Accordingly, the judgment of the district court is affirmed.

7. In *Richmond Marine Panama*, Judge Gurfein made the following observation:

Although *subsequent* Congressional explanation of the meaning of a statute is not binding on the courts, it is interesting to note, nevertheless, that a Senate Report of August 17, 1972 explained that the 1960 amendment extends jurisdiction under the Suits in Admiralty Act 'to the full range of admiralty cases

which might have been maintained had a private person or property been involved rather than the Government or its agents and employees or property.' Senate Report No. 92–1079, 92nd Cong., 2d Sess., 1972, 9 U.S. Code Cong. and Admin.News, pp. 4045, 4050.

*Richmond Marine Panama, S.A., supra* at 1220, note.