Mary F. SAWCZYK, as Administratrix of the Estate of Anthony J. Sawczyk, Deceased, Plaintiff,

v.

The UNITED STATES COAST GUARD, in the Department of Transportation of the United States, Defendant.

George A. WILSON and Althea George Ross, as Executors of the Estate of David Drummond Ross, Deceased, Plaintiffs,

v.

The UNITED STATES COAST GUARD, and the Department of Transportation of the United States, Defendants.

Nos. Civ–78–428, Civ.–78–435.

United States District Court, W. D. New York.

Oct. 15, 1980.

Lawless & Crowley, New York City (William B. Lawless, New York City, of counsel), for plaintiff Mary F. Sawczyk in Civ–78–428.

Grossman, Levine & Civiletto, Niagara Falls, N. Y. (Stanley Grossman, Niagara Falls, N. Y., of counsel), for plaintiffs George A. Wilson and Althea George Ross in Civ–78–435.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Michael A. Brady, Asst. U. S. Atty., Buffalo, N. Y., and Debra J. Kossow, Trial Atty., Torts Branch–Civil Division, U. S. Dept. of Justice, Washington, D. C., of counsel), for defendants.

CURTIN, Chief Judge.

The complaints in these two actions were filed on July 26, 1978. The plaintiffs seek to recover damages for the drowning deaths of plaintiffs' decedents which occurred as the result of the capsizing of a rubber raft in the lower Niagara River on August 29, 1975. Liability is predicated against the United States Coast Guard under the Federal Tort Claims Act ["FTCA"]. 28 U.S.C. § 1346(b).

The defendant has made a motion to dismiss the complaints. The government contends that plaintiffs' exclusive remedy for their claims lies in admiralty jurisdiction, under the Suits in Admiralty Act ["SIAA"], 46 U.S.C. §§ 741–52, and that this remedy is now time–barred.

On June 11, 1979, after an initial review of the applicable legal authorities, I issued a brief memorandum order indicating the court's concerns with respect to whether admiralty jurisdiction was applicable in these cases. My main question was whether the Niagara River was navigable as a matter of law, and I directed the parties to submit further papers on this point and to indicate whether a hearing should be held. After some delay, a hearing was held on March 4, 1980, and the motion was subsequently submitted for decision. Because matters outside the pleadings have been considered by the court, the defendant's motion must be considered as one for summary judgment under Rule 56. After careful consideration of all of the circumstances, I find that the motion must be granted.

## INTRODUCTION

In August of 1975, in anticipation of making raft trips available to the public on a commercial basis, Niagara Gorge River Trips, Inc. commenced a series of experimental raft excursions in the lower Niagara River. The trips were launched below the American Falls in the vicinity of the docks of the Maid–of–the–Mist, and they were terminated at Lewiston, New York, approximately seven miles north of the Falls. Representatives of Niagara Gorge River Trips had notified the United States Coast

Guard of this intention to conduct the raft trips, in order for the Coast Guard to determine whether the Niagara Gorge trips were subject to Coast Guard regulation. The Coast Guard determined that the rafts were not within its jurisdiction, and consequently it did not inspect the *Grider*, the raft used by Niagara Gorge, nor any of the raft's equipment. On August 29, 1975, Niagara Gorge initiated an eleventh experimental raft trip carrying approximately 27 passengers and two crew members. Tragically, the raft capsized and the plaintiffs' decedents were ejected, resulting in their drowning.

On August 19, 1977, a notice of claim was mailed to the Coast Guard on behalf of the plaintiffs. This effectively preserved any claims which plaintiffs may have under the FTCA. *See* 28 U.S.C. § 2401, which provides that a tort claim against the United States is barred unless it is presented to the appropriate federal agency within two years after the claim accrues. On January 26, 1978 the Coast Guard denied the plaintiffs' claims, asserting that they were extinguished by the running of the two–year period of limitations under the SIAA. The plaintiffs nonetheless filed their complaints under the FTCA on July 26, 1978, within the three–year period of limitations provided in the FTCA. The complaints essentially allege that but for the negligent and erroneous conclusion by the Coast Guard that it did not have jurisdiction to require inspection of the raft and its equipment prior to its use on a commercial basis, the capsizing and resulting deaths would not have occurred.

The legal issue before the court arises because the FTCA clearly provides that tort claims which can be brought against the United States under the SIAA cannot be brought against the government under the FTCA. Specifically, 28 U.S.C. § 2680(d) provides that the FTCA does not apply to "any claim for which a remedy is provided by sections 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States." Moreover, the SIAA provides:

Suits as authorized by this chapter may be brought *only within two years after* the cause of action arises: *Provided,* That where a remedy is provided by this chapter it shall hereafter be *exclusive of any other action* by reason of the same subject matter against the agent or employee of the United States or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim: . . .

46 U.S.C. § 745 (emphasis supplied). Since the Extension of Admiralty Jurisdiction Act of 1948, 46 U.S.C. § 740 (1970), brings all admiralty claims against the United States within the ambit of the SIAA, whether or not the claims involve government vessels or cargoes, *see Kelly v. United States*, 531 F.2d 1144, 1149 (2d Cir. 1976), if the plaintiffs' complaints allege admiralty claims then the SIAA provides their exclusive remedy. Thus, plaintiffs' claims under the FTCA are precluded, and any suit under the SIAA is time–barred by the strict, two–year period of limitations set out above in 46 U.S.C. § 745, if plaintiffs' claims sound in admiralty.

*MERITS*

 Admiralty and maritime jurisdiction extends to all navigable waters within the United States. *See, e. g., Southern S. S. Co. v. N. L. R. B.*, 316 U.S. 31, 41, 62 S.Ct. 886, 891–92, 86 L.Ed. 1246 (1942); 28 U.S.C. § 740. For many years, admiralty jurisdiction over maritime torts was governed by the "locality test:" if the substance and consummation of the injury complained of occurred upon navigable waters, even if the negligence occurred on land, admiralty jurisdiction was upheld. As the Supreme Court has indicated, however, it "has never explicitly held that a maritime locality is the sole test of admiralty jurisdiction." *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 260, 93 S.Ct. 493, 500, 34 L.Ed.2d 454 (1972). The Supreme Court determined that, in addition, there must be some relationship of the wrong to "traditional maritime activity." *Id.*, at 249, 93 S.Ct. at 495; *Kelly, supra*, at 1146. Therefore, admiralty jurisdiction exists in these

cases if: (1) the alleged wrongful injury occurred upon navigable waters, and (2) the alleged acts or omissions of the defendant "significantly relate to traditional maritime activity." *Kelly, supra*, at 1146.

Considering the second prong of this test first, the issue is whether the alleged negligence of the Coast Guard in failing to inspect the raft and its equipment bears a significant relationship to traditional maritime activity. I find that it does.

First, the function and role of the Coast Guard has as close a relationship to maritime activity as any agency in the federal government. As the Second Circuit has pointed out, "there is a definite federal interest in providing a forum and a uniform body of law for the adjudication of claims against the Coast Guard concerning its rendering of aid to persons and vessels in distress on navigable waters." *Id.*, at 1148. Although these cases do not involve the Coast Guard rendering aid to a vessel in distress, the federal interest in providing a forum for claims that the Coast Guard failed to carry out its inspection responsibilities must be considered as equally strong.

Second, as the court found in *Kelly*, the fact that alleged land–based omissions by the Coast Guard may have caused the injuries in this case does not in any way preclude admiralty jurisdiction. The court in *Kelly* found a sufficient maritime nexus where the plaintiff alleged that the Coast Guard was negligent in failing to rescue the victim from drowning, and it rejected the plaintiff's contention that since it was a land–based omission to act, the FTCA applied. *Id.*, at 1146–47. *See also Gercey v. United States*, 540 F.2d 536, 537 (1st Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977). The plaintiffs' argument that one has, in the instant cases, merely a prospective maritime nexus, since no maritime activity had occurred at the time the Coast Guard failed to assert its jurisdiction, is unconvincing. The focus should not be on the timing of the alleged act or omission, but on whether the actions are significantly related to maritime activity. Here, the Coast Guard's alleged duty to enforce its jurisdiction and its safety regulations is closely related to traditional maritime activity. That the alleged wrongful acts or omissions occurred on land is not relevant in these cases. I conclude, therefore, that the alleged wrongful acts of the defendant Coast Guard bear a significant relationship to traditional maritime activity and that this prong of the test for deciding whether admiralty jurisdiction exists is satisfied.

In order for there to be admiralty jurisdiction, though, it is also required that the injury alleged must have occurred in navigable waters. A determination of whether a waterway is navigable depends upon the purpose for which the definition is needed, *see, e. g., Doran v. Lee*, 287 F.Supp. 807, 809 (W.D.Pa.1968), but the fundamental definition of "navigable" for the purpose of establishing admiralty jurisdiction has long been established:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.

*The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870). The Supreme Court refined this definition in *The Montello*, 87 U.S. (20 Wall.) 430, 441, 22 L.Ed. 391 (1874), where the Court stated that

> the true test of the navigability of a stream does not depend on the mode by which commerce is, or may be, conducted, nor the difficulties attending navigation. . . .
>
> . . . The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use.

*See also United States v. Holt State Bank*, 270 U.S. 49, 56, 46 S.Ct. 197, 199, 70 L.Ed. 465 (1926). Finally, the Supreme Court has indicated that, in determining whether a

stretch of river is navigable in fact, a court should not look only at evidence concerning the natural condition of the waterway, ignoring the possibility of improvements; rather, "[i]ts availability for navigation must also be considered." *United States v. Appalachian Power Co.,* 311 U.S. 377, 407, 61 S.Ct. 291, 299, 85 L.Ed. 243 (1940). *See Rochester Gas and Electric Corp. v. Federal Power Comm'n,* 344 F.2d 594, 596 (2d Cir.), *cert. denied,* 382 U.S. 832, 86 S.Ct. 72, 15 L.Ed.2d 75 (1965). With this outline as a focus, the issue to be faced is whether the Niagara River is navigable.

The Niagara River flows from Lake Erie to Lake Ontario. The river forms an international boundary between the United States and Canada along its entire length of about 36 miles. There is no question that part of the Niagara is navigable in fact, for many types of commercial uses are made of the river from Lake Erie to an area just above Niagara Falls, and a stretch of the river from Lake Ontario south to Lewiston, New York has historically been susceptible to commercial navigation. What is in dispute is whether the stretch of the Niagara from just below Niagara Falls, through the lower rapids and the Whirlpool area, to Lewiston is navigable, the stretch over which the raft trips in these cases were conducted.

■ The plaintiffs contend that it would be ludicrous for anyone to conclude that the lower Niagara River, from the Falls to Lewiston, is navigable in fact. They point to the hazardous rapids in the Niagara Gorge and to the Whirlpool section of the river, and also to the general lack of any boating in this section of the river, to support their contention. There is a certain initial appeal to this argument. There can be no question but that the section of the river where the accident occurred, resulting in the loss of lives involved in these cases, has been and is forbidding and dangerous. Nonetheless, the court is constrained to find that the river is navigable for the following reasons.

First, although the evidence of actual commercial use before the court is not extensive, there is some evidence of such use. For at least a limited portion of the lower section of the river, that nearest the Falls, the Maid–of–the–Mist has operated a commercial venture for a number of years. Moreover, in 1972 for a period of two to three weeks, the Niagara River White Tours, Inc. operated four raft trips each day from the Maid–of–the–Mist docks in Niagara Falls, New York, to Lewiston, at a charge of $20.00 per person. Finally, the raft venture at issue in these cases evidences the continuing effort to exploit the river commercially.

■ Second, the court takes note that for administrative and regulatory purposes the Corps of Engineers and the Coast Guard consider the Niagara River navigable in its entirety. *See* Exhibit D attached to the government's Memorandum, filed July 19, 1979. Similarly, the New York courts, in determining the Congressional Commerce Clause powers with respect to the Niagara River, have held that the river is navigable in its entirety. The New York Court of Appeals has held:

> Whether the Niagara river is navigable at the particular point of the defendant's intake for water used to create power is immaterial. The Niagara river being navigable in part is thus navigable in whole, so far as the control of the river for purposes of commerce and navigation is concerned.

*Niagara Falls Power Co. v. Water Power and Control Comm'n,* 267 N.Y. 265, 270, 196 N.E. 51 (1935). Although these determinations are not controlling, they are not without significance and may be taken into account by the court in determining whether the Niagara is navigable. *See United States v. Oregon,* 295 U.S. 1, 23–24, 55 S.Ct. 610, 619, 79 L.Ed. 1267 (1935).

■ Third, and most important, the testimony of Mr. Cowdrick at the hearing and the deposition testimony of Mr. Grose both indicated that, with care, the whole stretch of the lower Niagara is navigable except the area near the Whirlpool. That a portion of a river is difficult to navigate, however, or even that it is "interrupted by

occasional natural obstructions" does not preclude a finding of navigability in a legal sense. *Economy Light & Power Co. v. United States*, 256 U.S. 113, 122, 41 S.Ct. 409, 412, 65 L.Ed. 847 (1921). It is whether a river has the capability to be used for the purposes of transportation and commerce which must be considered, and I cannot hold that the Niagara River, including the disputed area, lacks that potential. It is not necessary that a waterway now be open and used commercially, if it is susceptible of being used for transport and commerce whatever the modes may be. I find that there is no evidence before the court which indicates the river is not susceptible to such use and that the Niagara River has been, and can be in the future, capable of transportation and commerce. I find that the river is navigable.

## CONCLUSION

Having found that the Niagara River is a navigable waterway and having found that the acts or omissions of the Coast Guard alleged by the plaintiffs bear a substantial relationship to traditional maritime activity, I conclude that the claims made by the plaintiffs are within the admiralty jurisdiction of the court. Plaintiffs' exclusive remedy, therefore, is under the SIAA. That remedy is now time–barred because these actions were not brought within two years of the date the cause arose. Defendant's motions to dismiss these two actions are granted.

So ordered.