Manouchehr Monazzami **TAGHADOMI**, Individually and as Special Administrator of the Estate of Nahid Davoodabadi, deceased; the Estate of Nahid Davoodabadi; Ahmad Davoodabadi, the father of Nahid Davoodabadi; Kobra Ahangary, the mother of Nahid Davoodabadi, Plaintiffs,

v.

**EXTREME SPORTS MAUI; 25 Knots, Inc.; United States of America; John Does 1–10, Defendants.**

No. 01–00171.

United States District Court, D. Hawai'i.

Sept. 20, 2002.

---

Teresa Tico, Hanalei, HI, Peter A. Schey, Law Office of Peter Schey, Los Angeles, CA, Diane W. Wong, Ann H. Aratani, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, for Plaintiffs.

Diane W. Wong, Ann H. Aratani, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, for Defendants.

Warren A. Schneider, US Department of Justice West Coast Office, Civil Division Torts Branch, San Francisco, CA, for U.S.

**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT UNITED STATES AND DENYING PLAINTIFFS' MOTION TO AMEND**

GILLMOR, District Judge.

The case arises from an incident where Plaintiff Manouchehr Monazzami Taghado-mi and his wife Nahid Davoodabadi were allegedly swept to sea in a rented kayak. Nahid Davoodabadi died in the incident.

The plaintiffs are Taghadomi, the Estate of Nahid Davoodabadi, and the parents of Nahid Davoodabadi.

The defendants are the company that rented the kayak to the couple, and the United States, which is being sued for the alleged negligent conduct of the United States Coast Guard which participated in the ensuing search and rescue operation.

Defendant United States argues the claims against it are admiralty claims, which may only be brought against the United States pursuant to the Suits in Admiralty Act and/or the Public Vessels Act. The United States argues the claims were not filed within two years as required by the Acts.

Plaintiffs assert that the portion of their claims dealing with negligence of land-based Coast Guard personnel are not admiralty claims, and may therefore be brought under the Federal Tort Claims Act. Plaintiffs argue their claims are timely under the Federal Tort Claims Act.

The claims against the United States Coast Guard contained in the Fourth Cause of Action of the Second Amended Complaint are admiralty claims and are DISMISSED. There are no remaining claims against the United States.

Plaintiffs' Motion to Amend the Second Amended Complaint is DENIED as futile.

### FACTUAL BACKGROUND

On March 18, 1999, while visiting the Island of Maui, Plaintiff Taghadomi and Nahid Davoodabadi rented a kayak from Defendant 25 Knots, Inc., dba Extreme Sports Maui ("Extreme Sports"). According to Plaintiff Taghadomi, they were swept to sea by high winds while kayaking and Nahid Davoodabadi was attacked by a

shark and died from her injuries. Her body was lost at sea. Plaintiff Taghadomi eventually landed on the island of Kahoolawe, where he was rescued on March 21, 1999.

The action was initially brought by Plaintiff Taghadomi and the estate of Nahid Davoodabadi ("the Estate") against Extreme Sports.

Plaintiff Ahmad Davoodabadi, the father of Nahid Daboodabadi, and Kobra Ahangary, the mother of Nahid Davoodabadi, (collectively, the "Parents"), were added as plaintiffs by the Second Amended Complaint filed January 29, 2002.

The United States was added as a defendant by the Second Amended Complaint. All claims against the United States are contained in the Fourth Cause of Action of the Second Amended Complaint.

The United States has taken the position that only Plaintiff Taghadomi asserts claims in the Fourth Cause of Action. Plaintiffs claim they have all asserted claims against the United States in the Fourth Cause of Action. The parties to the Fourth Cause of Action most certainly could have been better identified by Plaintiffs. The Court, however, must liberally construe the allegations contained in the Second Amended Complaint. The Court therefore treats all Plaintiffs as parties to the Fourth Cause of Action. The Court considers the United States' Motion to Dismiss or for Summary Judgment with respect to all Plaintiffs.

According to the Second Amended Complaint, the United States Coast Guard received a distress call about the kayak shortly before dark on March 18, 1999. The Coast Guard sent a vessel to search the area, but failed to ask for assistance from the Maui Fire Department or other vessels in the area. Plaintiffs claim that the Coast Guard's failure to seek outside assistance resulted in Nahid Davoodabadi's death and constituted negligence.

## PROCEDURAL HISTORY

Plaintiff Taghadomi, individually and as special administrator of the estate of Nahid Davoodabadi, filed a Complaint against Extreme Sports Maui on March 13, 2001 and a First Amended Complaint on June 12, 2001. The First Amended Complaint added the Estate of Nahid Davoodabadi as a plaintiff and 25 Knots, Inc., as a defendant.

On January 29, 2002, a Second Amended Complaint was filed. The Second Amended Complaint added the parents of Nahid Davoodabadi as plaintiffs and the United States as a defendant.

Defendant 25 Knots, Inc., dba Extreme Sports Maui, filed an Answer to the Second Amended Complaint that contained a Crossclaim against the United States.

The United States filed an Answer to the Crossclaim on March 22, 2002.

Defendant Taghadomi was appointed Special Administrator for the Estate of Nahid Davoodabadi on July 16, 2002, by a Hawaii state court.

## Motion to Dismiss or for Summary Judgment

On March 22, 2002, the United States filed its Motion for Dismissal or, in the Alternative, for Summary Judgment, and Separate and Concise Statement.

On May 17, 2002, Plaintiffs filed their Opposition to Defendant United States' Motion to Dismiss or in the Alternative for Summary Judgment.

On May 20, 2002, Plaintiffs filed exhibits in support of their opposition.

On May 21, 2002, Plaintiffs filed a pleading entitled "Plaintiffs' Concise Statement of Material Facts Accepted or for Which It Is Contended There Exists a Genuine Issue for Trial."

On May 22, 2002, the United States filed its Reply.

**Motion to Amend.**

On May 7, 2002, Plaintiffs filed their Motion to Amend Complaint that is before the Court.

On May 15, 2002, the United States filed its Memorandum in Opposition to Plaintiffs' Motion to Amend Complaint.

On May 28, 2002, Plaintiffs lodged their Reply, which was accepted for filing by order dated May 29, 2002.

## LEGAL STANDARDS

**Motion to Dismiss**

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed unless it appears to a certainty that plaintiff can prove no set of facts which would entitle the plaintiff to relief. *See Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Fidelity Fin. Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987).

"Whenever a district court looks beyond the pleadings in evaluating a Rule 12(b)(6) motion to dismiss, the motion must be treated as one for summary judgment under Rule 56." *Grove v. Mead School Dist. No. 354,* 753 F.2d 1528, 1532 (9th Cir. 1985).

**Summary Judgment**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file [in the case] that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,*

477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment without significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The court must view the facts in the light most favorable to the non-moving party (*State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989)). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e).

**Leave to amend**

Under Fed.R.Civ.P. 15(a), a request for leave to amend a complaint "shall be freely given when justice so requires."

■ "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987).

## ANALYSIS

### I. MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

■ The parties have submitted and the Court has considered matters outside of the pleadings. The Court treats the Motion to Dismiss or for Summary Judgment as a motion for summary judgment. *Grove,* 753 F.2d at 1532.

■ The determinative issue with respect to the Motion for Summary Judgment is whether Plaintiffs' claims against the United States are based in admiralty. If the claims are based in admiralty, the

claims must be brought under the Suits in Admiralty Act ("SIAA"), 46 App. U.S.C. § 741 *et seq.*, and/or the Public Vessels Act ("PVA"), 46 App. U.S.C. § 781 *et seq. T.J. Falgout Boats, Inc. v. United States*, 508 F.2d 855, 856 (9th Cir.1974). The SIAA and PVA provide a two-year statute of limitations period and impose conditions limiting suits by non-citizens. *See Aliotti v. United States*, 221 F.2d 598, 600 (9th Cir.1955); *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 181, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976). The United States asserts that the claims against it are barred under the SIAA and PVA.

The Court first considers whether Plaintiffs' claims are based in admiralty law.

## A. Admiralty claims.

■ To determine if a tort is based in admiralty, the courts apply a "location test" and a "connection test". A claim that satisfies both tests is based in admiralty.

■ Under the location test, the alleged tort must have occurred over navigable waters or have been caused by a vessel. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). Under the connection test, two conditions must be met: first, considering the general features of the incident involved, the incident must have a potentially disruptive effect on maritime commerce; second, the general character of the activity giving rise to the incident must show a substantial relationship to traditional maritime activity. *Id.*

If all conditions are met, the claims are admiralty claims.

### 1. First condition: Location.

■ Plaintiffs claim the negligent acts of the Coast Guard occurred on land. It is well settled, however, that a tort is deemed to occur where the injury occurs. *Oppen*

*v. Aetna Ins. Co.*, 485 F.2d 252 (9th Cir. 1973); *Guidry v. Durkin*, 834 F.2d 1465, 1469 (9th Cir.1987) (Under maritime common law, "[C]ourts have traditionally defined the locus of the tort as the place where the injury occurs.") (quoting *Solano v. Beilby*, 761 F.2d 1369, 1371 (9th Cir. 1985)); *Roberts v. United States*, 498 F.2d 520, 523 n. 3 (9th Cir.1974) ("[I]n applying the maritime locality test a tort is deemed to occur not where the wrongful act or omission had its inception, but at the place where it became operative, i.e., place of injury.")

■ The death of Nahid Davoodabadi occurred in the Pacific Ocean, off the island of Maui, in navigable waters. The shock and distress allegedly suffered by Plaintiff Taghadomi also occurred in navigable waters. The locality test is clearly met.

### 2. Second Condition: the potential to disrupt maritime commerce.

■ Under the second test for admiralty jurisdiction, the Court considers whether the incident had the potential to disrupt maritime commerce. *Grubart*, 513 U.S. at 538, 115 S.Ct. 1043. The Court looks at the incident at an "intermediate level of possible generality" and considers "whether the incident could be seen within a class of incidents that pose[ ] more than a fanciful risk to commercial shipping." *Id.* at 538–39, 115 S.Ct. 1043.

■ An incident that is likely to require search and rescue operations affects maritime commerce because it may require the assistance of other boats. "The law of admiralty has always sought to 'encourage and induce men of the sea to go to the aid of life and property in distress.' " *Berg v. Chevron U.S.A.*, 759 F.2d 1425, 1429 (9th Cir.1985) (citation omitted); *See also Delta Country Ventures, Inc. v. Magana*, 986 F.2d 1260 (9th Cir.1993) (affirm-

ing district court decision that held in part that a diving accident requiring rescue operations affected maritime commerce); *Polly v. Estate of Carlson,* 859 F.Supp. 270, 272 (E.D.Mich.1994) ("That men were overboard in an emergency situation by itself is likely to disrupt commercial activity. . . .")

A search and rescue operation also diverts Coast Guard resources from other functions that may involve protection of commercial shipping and shipping lanes.

The Court finds that the incident had the potential to disrupt maritime commerce.

### 3. Third condition: substantial relationship to maritime activity.

Under the last prong of the test for admiralty jurisdiction, the general character of the activity must bear a substantial relationship to traditional maritime activity. *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043. A court considers whether the defendant's activity "is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539–40, 115 S.Ct. 1043.

The last prong of the test of admiralty jurisdiction is easily met here. As described above, admiralty law has always encouraged rescue of persons in distress. *Berg,* 759 F.2d at 1429.

The issue of negligence in the context of a rescue of a person at sea is well developed by federal admiralty law. It is clearly settled under admiralty law that the Coast Guard does not have a duty to rescue. *Bunting v. United States,* 884 F.2d 1143, 1147 (9th Cir.1989). "The Coast Guard is not held to any higher standard of care in its rescue operations than a private person." *Wright v. United States,* 700 F.Supp. 490, 494 (N.D.Cal. 1988). "[A] rescuer will be held liable only

(1) for negligent conduct that worsens the position of the victim or (2) for reckless and wanton conduct in performing the rescue." *Berg,* 759 F.2d at 1430. The liability of a rescuer of a person at sea is well developed under admiralty law. In *Kelly v. United States,* 531 F.2d 1144, 1147 (2d Cir.1976), the court specifically held that search and rescue operations of the Coast Guard were traditional maritime activities.

The claims against the United States all relate to the Coast Guard's search and rescue functions. Coast Guard search and rescue operations bear a substantial relationship to traditional maritime activity.

### 4. The claims are admiralty torts.

The claims against the United States satisfy all three conditions for admiralty jurisdiction. The claims against the United States are based in admiralty.

### B. The claims are barred by the SIAA and PVA.

### 1. Requirements of the SIAA and PVA.

Under the Suits in Admiralty Act ("SIAA"), 46 App. U.S.C. § 741 *et seq.,* the United States has consented to be sued by private parties for admiralty torts:

> In cases where . . . a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States . . .

46 App. U.S.C. § 742. The SIAA waives the sovereign immunity of the United States with respect to admiralty claims, but does not itself provide a cause of action against the United States:

> The SIAA . . . removes the government's traditional cloak of sovereign immunity from maritime tort liability and provides that suit may be brought against the United States 'where . . . if a

private person or property were involved, a proceeding [in] admiralty could be maintained....' 46 [App.] U.S.C. § 742.

*Huber v. United States*, 838 F.2d 398, 400 (9th Cir.1988).

The Public Vessels Act ("PVA"), 46 App. U.S.C. § 781 *et seq.*, was enacted after the SIAA. The PVA allows an action to be brought against the United States for damages caused by public vessels. 46 App. U.S.C. § 781. The PVA has been expanded to include damages caused by the negligence of the crew of a public vessel. *Canadian Aviator v. United States*, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901 (1945).

 "The Suits in Admiralty Act and the subsequently adopted Public Vessels Act are complementary jurisdictional statutes providing for admiralty suits against the United States." *Aliotti*, 221 F.2d at 602. "[B]y virtue of their interrelated status, the SIAA and the PVA together provide original and exclusive admiralty jurisdiction in the United States district courts." *Guidry*, 834 F.2d at 1472 (citation and footnote omitted).

 Section 745 of the SIAA provides that any claim must be brought "within two years after the cause of action arises...." The SIAA's 2–year limitations period applies to the PVA. *Aliotti*, 221 F.2d at 600.

#### 2. Plaintiff Taghadomi and the Estate's claims are not timely.

#### i. Plaintiff Taghadomi.

 The alleged negligence of the Coast Guard occurred on March 18, 1999, when the rescue operation was conducted. The two-year limitations period began on the date of injury, which also occurred on March 18, 1999. *See Williams v. United*

*States*, 711 F.2d 893, 898 (9th Cir.1983) (holding that limitations period begins on date of injury). Plaintiff Taghadomi did not assert a claim against the United States until the Second Amended Complaint was filed on January 29, 2002, more than two years after the date of injury.[1]

 Even if Plaintiff Taghadomi's action did not arise until he found out about the Coast Guard's involvement, the claims are still time-barred. Plaintiff asserts he found out about the Coast Guard's negligence in May or June of 1999 when he obtained documents pursuant to the Freedom of Information Act. (Proposed Third Amended Complaint at par. 30.) Plaintiff Taghadomi did not file a complaint against the United States until more than two years later on January 29, 2002, when he filed his Second Amended Complaint.

Plaintiff Taghadomi's claims against the United States are subject to the SIAA's two-year limitations period and are untimely.

#### ii. The Estate.

 The Estate's claims are also untimely. A representative of a decedent's estate may bring a survival action under general maritime law. *See Sutton v. Earles*, 26 F.3d 903, 919 (9th Cir.1994); *Evich v. Connelly*, 759 F.2d 1432, 1434 (9th Cir.1985). Survival actions must be asserted under the SIAA or PVA, which provide a two-year statute of limitations. *See Kelly*, 531 F.2d at 1149 (holding that claim by administrator for death of decedent was barred by the SIAA's two-year limitations period). An SIAA action is deemed to arise on the date of injury or death. *See Williams*, 711 F.2d at 898 (SIAA's two-year limitation period starts on date of injury); *Malgren v. United*

---

1. Plaintiffs' motion for leave to amend to include claims against the United States was filed on September 18, 2001, also more than two years after the date of injury.

*States,* 390 F.Supp. 154, 157 (W.D.Mich. 1975); *Piascik v. United States,* 65 F.Supp. 430, 431 (S.D.N.Y.1944) (two-year limitations period runs from date of death, not from date of appointment of administrator). The Estate claims that Nahid Davoodabadi died on March 18, 1999, from injuries suffered in a shark attack. The Estate's claim against the United States was not filed until more than two years later, on January 29, 2002.

### iii. Tolling.

The Ninth Circuit has held that the SIAA's two-year limitations period may not be equitably tolled. *T.J. Falgout Boats, Inc.,* 508 F.2d at 858; *Smith v. United States,* 873 F.2d 218, 221 (1989). It is unclear, however, if the ban on equitable tolling is still good law. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (indicating that equitable tolling may be available in an action against the United States) and *Alvarez–Machain v. United States,* 107 F.3d 696, 701 (9th Cir. 1996) (In the context of an FTCA claim, Ninth Circuit held that equitable tolling is available in suits against the United States because there is no evidence of Congressional intent to the contrary.)

▉ Assuming the Court may toll the two-year limitations period of the SIAA, there is no basis for equitable tolling here. Plaintiffs did not file any complaint against the United States during the two-year period, and there has been no evidence presented that the government engaged in any misconduct that induced Plaintiffs to allow the filing deadline to pass. *See Irwin,* 498 U.S. at 96, 111 S.Ct. 453.

### 3. The Parents' claims are barred.

▉ The PVA does not allow suits against the United States by non-citizens unless their country allows similar suits by citizens of the United States:

> No suit may be brought under this chapter by a national of any foreign government unless it shall appear to the satisfaction of the court in which suit is brought that said government, under similar circumstances, allows nationals of the United States to sue in its courts.

46 App. U.S.C. § 785. The Parents concede that they may not bring a claim under the PVA or SIAA[2] because of acts' reciprocity provision. The Parents allege that Iran does not allow citizens of the United States to bring PVA-type claims in Iranian courts.

▉ The Parents, relying on a novel argument, claim they may bring admiralty claims barred by the SIAA and PVA under the FTCA. The Parents explain their position as follows: Section 2680(d) of the FTCA states that the FTCA does not apply to any claim for which a remedy is provided by the SIAA or the PVA. Because they are barred by their Iranian citizenship from obtaining a "remedy" against the United States under the PVA or the SIAA, the Parents claim they necessarily have recourse against the United States through the FTCA.

Plaintiffs' argument lacks merit. The reciprocity requirement of the PVA would be meaningless if a non-citizen could bring barred admiralty claims under the FTCA. Plaintiffs cite to no caselaw where a court has held that a non-citizen may assert admiralty claims barred by the PVA under the FTCA.

---

**2.** Although only the PVA contains the reciprocity requirement, claims barred by the PVA's reciprocity requirement may not be asserted under the SIAA. *See United Continen-*

*tal Tuna Corp.,* 425 U.S. at 181, 96 S.Ct. 1319 (allowing non-citizens to bring barred PVA claims under the SIAA would render the reciprocity provision of the PVA meaningless).

■ The Ninth Circuit has made it clear that the United States' waiver of sovereign immunity with respect to admiralty claims is limited to claims brought under the SIAA or PVA. An admiralty claim may not be raised against the United States under the FTCA:

> Prior to [1960 amendments to the SIAA], not all maritime actions against the United States were within the scope of the two federal admiralty statutes. Maritime claims against the United States, beyond the reach of the SAA or the PVA, were then brought under the FTCA. Following the 1960 SAA amendment, however, waiver of sovereign immunity for SAA-type cases required that the SAA, not the FTCA, be pleaded.... [Plaintiff] alleged jurisdiction alternatively on the FTCA or the SAA. The SAA exclusively controls the action herein.

*Williams,* 711 F.2d at 897 (citations and footnote omitted). "The Supreme Court has uniformly held that a maritime action may be maintained against the United States only under the Suits in Admiralty Act." *T.J. Falgout Boats, Inc.,* 508 F.2d at 856.

The Parents' claims against the United States are based on admiralty. The United States' waiver of sovereign immunity with respect to admiralty claims is found in the SIAA and PVA, not in the FTCA.

### 4. The claims may not be brought under the FTCA.

■ Plaintiffs argue they can separate out land-based negligence from their admiralty claims. Plaintiffs allege that claims asserting land-based negligence may be brought under the Federal Tort Claims Act, and are not subject to the time or citizenship requirements of the SIAA and PVA.

An almost identical issue was at issue in *Kelly v. United States,* 531 F.2d 1144 (2d Cir.1976), which was cited approvingly by the Ninth Circuit in *Solano,* 761 F.2d at 1371, for the proposition that a maritime tort occurs where the injury occurs.

In *Kelly,* a person drowned after his sailboat capsized on a lake. The plaintiff alleged the Coast Guard was negligent in its search and rescue operation and in causing other would-be rescuers not to come to the victim's aid. *Kelly,* 531 F.2d at 1145. The plaintiff filed a claim with the Coast Guard and later brought a court action against the United States under the FTCA. The Second Circuit Court of Appeals held that the FTCA did not apply to the plaintiff's claims because the tort alleged was maritime in nature. The case was dismissed because the complaint was not filed within two years as required by the SIAA. *Id.* at 1149, 531 F.2d 1144.

In holding that the tort was maritime in nature, the court rejected the plaintiff's claim that jurisdiction existed under the FTCA because the negligence involved land-based acts and omissions:

> The mere fact that land-based acts or omissions may have contributed to the drowning ... does not alone preclude admiralty jurisdiction....' [W]here the negligent act originates on land and the damage occurs on water, the cause of action is within the admiralty jurisdiction.'

*Id.* at 1146, 531 F.2d 1144 (citations omitted). The court emphasized that the case primarily involved water rescue operations, a task which is clearly maritime in nature. *Id.* at 1147. The court also emphasized the close relationship between the Coast Guard and maritime activity. *Id.* at 1148.

*Roberts v. United States,* 498 F.2d 520 (9th Cir.1974), also involved alleged negligence that occurred primarily on land. In *Roberts,* a cargo plane crashed in navigable waters while approaching a runway for

landing. The plaintiffs brought a wrongful death action against the Air Force, claiming "Air Force personnel negligently directed the landing and subsequent rescue operations...." *Id.* at 522.

The district court allowed the claims to proceed as maritime claims under the FTCA.

The Ninth Circuit held that the complaint stated claims that were maritime in nature and which had to be asserted under the SIAA. *Roberts*, 498 F.2d at 526. As the Ninth Circuit Court of Appeals explained in a subsequent case:

> "We found in *Roberts* that the SAA, not the FTCA, provided the requisite waiver of sovereign immunity. That determination rested on a finding that the alleged negligence of the U.S. Air Force personnel constituted a maritime common law tort."

*Williams*, 711 F.2d at 895 (footnote omitted).

## II. MOTION TO AMEND.

■■■ Plaintiffs seek leave to provide further explanation of the land-based negligence of the Coast Guard and to allow the Parents to assert an FTCA claim against the United States.

The Court has determined that Plaintiffs' claims against the United States are based in admiralty and are barred. Plaintiffs may not assert their claims against the United States under the FTCA. The proposed amendment is futile and the Motion to Amend is denied. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998) (leave to amend should be denied if amendment would be futile or subject to dismissal.)

## CONCLUSION

Based on the foregoing, Defendant United States' Motion to Dismiss, or in the Alternative, for Summary Judgment, is GRANTED as to the request for summary judgment.

Plaintiffs' Motion to Amend is DENIED as futile.

There are no remaining claims by any plaintiff against the United States and Plaintiffs' Fourth Cause of Action contained in the Second Amended Complaint is dismissed.

IT IS SO ORDERED.